Alex Joseph ADDY, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–92–00169–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 25, 1993.

Edward A. Mallett, Alexander Bunin, Houston, for appellant.

Kathryn M. Holton, Richmond, for appellee.

Before COHEN, MIRABAL and PRICE,[1] JJ.

## OPINION

PRICE, Justice (Assigned).

This appeal is from a conviction for possession with the intent to deliver an aggravated amount of cocaine. A jury found Alex Joseph Addy, appellant, guilty and assessed punishment at 75–years confinement and a $250,000 fine.

This case arose from an undercover drug operation by the United States Justice Department's Drug Enforcement Division (DEA). Appellant was detained after exiting a house that was under surveillance by the DEA. Appellant signed a form consenting to the search of his automobile. The officers, during the search, retrieved a briefcase containing three packages of cocaine from the trunk of the vehicle.

In his first and second points of error, appellant asserts the trial court erred in denying him a public trial pursuant to U.S. Const. amend. VI and Tex. Const. art. I, § 10.

During the presentation of the State's case-in-chief, appellant's attorney did not cross-examine any of the State's witnesses. Instead, he reserved his right to cross-examine these witnesses during appellant's case-in-chief. Appellant's entire defense was developed through cross-examination of these witnesses.

On the morning of the second day of testimony, with the jury seated in the courtroom, but before the proceedings be-

gan, the prosecutor requested that six spectators be sworn in and placed under the rule as potential witnesses. The record reflects the following:

[Prosecutor]: Your Honor, I think there are potential witnesses in the courtroom. If I may have your names, please?

[Defense counsel]: They are not witnesses, they are friends of the Defendant's [sic]. They are not going to testify.

[Prosecutor]: I am going to call them. Your names, please?

(WHEREUPON, the names of the potential witnesses were retrieved from those potential witnesses out of the hearing of the court reporter).

(WHEREUPON, the potential witnesses were sworn by the Clerk of the Court).

[The Court:] The Rule has been invoked, which means that you will be excluded from the courtroom during the course of the testimony in this case. You're also directed that you are not to discuss your testimony with anyone other than the attorneys in this case until you're called to testify on the stand or either before or after you testify. At this time, if you will step out of the courtroom.

[Defense counsel]: Your honor, before they are excluded, I would ask that they be released from the Rule. They have no knowledge of any of the facts of this case. They are friends of the Defendant. The Prosecution has chosen to swear these people in for the sole purpose of getting them outside the courtroom. She has no idea who they are or what they are going to say. We object, Mr. Addy has the right to have these people present in the courtroom as they have no, no information concerning anything having to do with this case, and I would ask the Court to inquire if the Court chooses, but to deprive Mr. Addy of access to his friends in a public courtroom is a deprivation of his rights as guaranteed to him

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

by the 6th Amendment, and we would ask the Court to, at the very least, make an inquiry of each of these folks.

They are not going to testify and have no knowledge, but they ask to be allowed to remain in the courtroom throughout the proceedings.

[The Court]: Is it the State's intent to call these individuals as witnesses?

[Prosecutor]: Your Honor, at this time there is a great possibility I may.

[The Court]: If you'll step out of the courtroom.

[Defense counsel]: Note our objection.

[Prosecutor]: Your Honor, at this time the State of Texas would rest.

Appellant's attorney then began the presentation of the defense by the State's witnesses who had previously testified on the State's case-in-chief. Additionally, he attempted to call the prosecutor, Susan Lowery. The following occurred:

[Defense counsel]: Yes, your Honor. At this time the defense would like to call Ms. Susan Lowery as a witness.

(Before the bench outside the hearing of the jury panel)

[The Court]: You may proceed.

[Prosecutor]: Your Honor, at this time I would like to determine what the relevancy is of calling Mrs. [sic] Lowery as a witness. Generally an attorney for either side cannot be called as a witness unless it relates to factual matters, but if it doesn't relate to a factual matter, I don't see what the purpose of calling her at all, particularly in front of the jury, would be.

[The Court]: Where are you going with this?

[Defense counsel]: I will agree, ordinarily that's the case. The lawyer should never interject himself where he is a witness as opposed to an advocate. However, I intend to question her as to her reason and motive for excluding five [sic] black people and excluding them in front of the jury and taking the position that they are witnesses. She has not, I know for a fact, she has not talked to them, and they are not witnesses. And she was solely motivated of depriving

Mr. Addy of his 6th Amendment rights to a public trial and impartial jury. I need to question her so that the jury may see what motivates the counselor.

[The Court]: If there is a motive for it, we will take it up at the end of the trial. Right now they are named witnesses until shown otherwise.

[Defense counsel]: Judge, for purposes of this objection I would request that I be allowed to question the district attorney. The names of the individuals are Leonard Richard, Gloria Brady, Carrie Dalcover, Cecilia Pickney, Barbara Woodard, and Paul Sadler. And I would like for the record to reflect that all of these folks are black and all of them were excluded in front of the jury. And I would like for the record to reflect that the prosecutor has informed me that she has taken their names and other pertinent information from these individuals, and she has instructed her investigator to run criminal checks on the people, and it goes beyond any type of exclusion for the purpose of this trial. It bothers me to the extent that she would single out these black folks and run them out of the courtroom, and throughout the trial there have been a number of people in here, and before this, and she has not excluded anybody. For the Prosecutor to take the position that it was done for security purposes, the informant is not here in the building. In fact, if she was motivated for security purposes concerning the informant she could have asked for them to be excluded when he testified, but she didn't choose to do that when he testified for the State, and that's not the true motive. If she thought that they posed some kind of security threat she could have checked them out and then let them sit in the courtroom. We want them to be able to sit as spectators, and it's Mr. Addy's right to have them.

[The Court]: Your response.

[Prosecutor]: Your Honor, these people, I don't have any idea where [defense attorney] is going with this. This is the first time I have been in a situation

where cross examination was saved until the last. I do not know whether they are pertinent witnesses. I might need to call them if some defense purpose comes up, whatever Mr. Addy's purpose may be, at this time I don't know what they may be. Also it may go to the fact that we have an international informant that is a security risk. I could not endanger my informant, knowing they showed up, knowing full well that Mr. Vela asked that my informant be back today. I think it's only for his safety that I make sure. These people were not here yesterday and they were the only people in the courtroom this morning when the trial began. I think this is very essential for the safety of my confidential informant and that I take all precautions necessary and for the benefit of my trial that they may become potential witnesses in my case.

[The Court]: For the purposes of the record, this courtroom has been open during the entire proceedings of this case. In fact, there is a lady who has been here for two days that I believe is a member of Mr. Addy's family that has been in the courtroom. She came in late after these other people were excluded. Is she a part of Mr. Addy's family?

[Defense counsel]: All right, may I request, for the record—

[The Court]: I will allow you to make a record outside the presence of the jury at the end of the case.

At the conclusion of the testimony and prior to charging the jury, the record reflects the following:

[Defense counsel]: At this time, prior to the time that this case is submitted to the jury, the Defendant would reurge and request to be allowed to question the District Attorney with reference to the exclusion of certain members of this community from being able to participate in this trial. I think the conclusion of the evidence shows, in fact, that she did not call any of these people, and I think the record would show, in fact, she did it merely for the purpose of exclusion and nothing else, and I think that this is a violation, and that the jury should be

afforded an opportunity to hear this testimony, and I would ask the Court to allow the Defense to put on its testimony in the form of allowing the Defense to question Mrs. Lowery before the case is submitted to the jury.

[Prosecutor]: I feel it was strategy on his part, and if I'm allowed to testify before the jury it would cause more harm and reversible error to the Defendant's case and aid the Defendant, due to the fact that I felt there was a grave security issue with our informant, since there had been threats on his life when he was in the courtroom. I was informed that he recognized somebody in the courthouse. Secondly, I was fearful for the safety of the jurors, and the third reason I had never been in a situation in which the Defense waived all cross examination until the latter part of the trial. I had no idea what Defense had in mind, I had no idea whether these might be witnesses that I would want to call and wouldn't be allowed to call because they were not subject to the rule.

[The Court]: Your request is denied.

This case is not a situation where the trial was closed to the public generally, but one which concerns the exclusion of only a few people. Thus, the question we address is whether the exclusion from the courtroom of six friends of appellant denied him the right to a public trial.

The sixth amendment to the Constitution of the United States guarantees an accused the right to a public trial. The due process clause of the fourteenth amendment makes this right applicable to trials conducted in State court.

Public trials play a fundamental role in guaranteeing a defendant a fair trial. This right prevents the abuse of judicial power, discourages perjury, encourages unidentified potential witnesses to come forward, and instills in the public the perception that their courts are acting fairly. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569–71, 100 S.Ct. 2814, 2823–24, 65 L.Ed.2d 973 (1980).

■ The right to a completely open trial is not absolute, however. Limitations on public attendance may be imposed where they are necessary to protect a State's interest that outweighs the defendant's right to public scrutiny. *Rovinsky v. McKaskle*, 722 F.2d 197, 200 (5th Cir. 1984). Protection of witnesses from extreme embarrassment or intimidation that would traumatize them or render them unable to testify is an overriding State interest sufficient to justify partial or complete exclusion of the press or public. *Id.* But no State's interest, however compelling, can sustain the exclusion of press and public from part of a trial, absent findings of necessity articulated on the record. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–609, 102 S.Ct. 2613, 2619–2621, 73 L.Ed.2d 248 (1982). Before closing a trial, the judge must state on the record his reasons for doing so to inform the public and enable the appellate court an opportunity to review the adequacy of the reasons. *Id.*

■ Here, the trial judge never made findings to justify removing appellant's friends from the courtroom. The State claims that the mandatory language of TEX. R.CRIM.EVID. 613, the "exclusion of witnesses rule," permits it to identify any spectator as a witness and have that person removed from the courtroom. We disagree. If this were true, the prosecution would have unlimited power to control who stayed in the courtroom during trial by merely invoking the provisions of the "exclusion of witnesses rule" to those it considered undesirable as spectators. Such authority would allow a state rule of evidence to take precedence over rights guaranteed by the United States and Texas Constitutions. Moreover, it is well settled that state rules of criminal evidence are subordinate to the United States and Texas constitutional provisions. TEX.R.CRIM.EVID. 101(c).

■ The barring of only some members of the public from the courtroom does not necessarily mean that an accused has been denied a public trial. That determination turns on the particular circumstances of the case. *Levine v. United States*, 362 U.S. 610, 616–17, 80 S.Ct. 1038, 1042–43, 4 L.Ed.2d 989 (1960). Courts have differed over the propriety of excluding certain persons from criminal trials. *Aaron v. Capps*, 507 F.2d 685, 686 (5th Cir.1975). The guidelines of this right to a public trial are unclear. However, "without exception all courts have held that an accused is at the very least entitled to have his friends, relatives, and counsel present, regardless with what offense he may be charged." *In re Oliver*, 333 U.S. 257, 271–72, 68 S.Ct. 499, 506–07, 92 L.Ed. 682 (1948).

■ The presence of an accused's friends in the courtroom lends moral support to the accused and helps insure honest proceedings. If an accused is denied the presence of his friends, he is denied a public trial, unless the trial court can articulate on the record some compelling reason for excluding them.

■ Here, there was no compelling reason to exclude appellant's friends. The trial court at the request of the prosecution, and over the repeated objections by appellant's trial counsel, removed the spectators from the courtroom. The trial court took this action under the "exclusion of witnesses rule" knowing that the State had no knowledge as to who they were or what, if anything, they knew about the facts of the case.

In addition, the jury heard the discussion between the attorneys and the trial court, and saw the spectators removed. As the trial court gave no compelling reason for taking this action and gave no jury instruction, the jury was left to imagine the worst about appellant and his friends. This could only have had a chilling effect on the defense and an adverse affect on the jury's perception of appellant's character.

The prosecutor's reason for excluding the spectators was not elicited until after the testimony was concluded. At that time, and out of the presence of the jury, the prosecution informed the trial court that her real reason for having appellant's friends removed from the courtroom was for security. However, she offered nothing to the trial court to indicate that these

six people posed any threat to the proceedings or to any person involved in the proceedings. Had the trial court elicited this reason before removing the spectators, a hearing could have determined whether other arrangements needed to be made to accommodate both the prosecutor's need to protect her international informant and the right of the defendant to have his friends in the courtroom.

Absent an overriding interest articulated in the record, the trial of a criminal case must be open to the public. *Richmond Newspapers, Inc.*, 448 U.S. at 581, 100 S.Ct. at 2829. We hold that the exclusion of appellant's six friends from the courtroom was reversible error of a constitutional dimension, requiring no showing of harm. *Rovinsky*, 722 F.2d at 201.

Appellant's first and second points of error are sustained.

Because of our disposition of points of error one and two, we decline to address point of error three. The judgment is reversed, and the case is remanded back to the trial court for a new trial.