**Ronald Lee PETERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–97–466CR.**

Court of Appeals of Texas,
Beaumont.

Submitted April 29, 1999.

Decided Aug. 11, 1999.

Rehearing Overruled Sept. 2, 1999.

Christine Brown, Orange, for Appellant.

John Kimbrough, County Atty., Paul M. Fukuda, Asst. County Atty., Orange, for State.

Before WALKER, C.J., BURGESS, and STOVER, JJ.

## OPINION

STOVER, Justice.

Following a plea of not guilty, Ronald Lee Peters was convicted by a jury for the offense of aggravated sexual assault. Punishment was assessed by the court at fifty years confinement in the Institutional Division of the Texas Department of Criminal Justice. Peters brings six points of error on appeal.

On January 25, 1997, Police officers Ted Picard and Thomas Verrett responded to a call of an alleged sexual assault of a child at a mobile home in Vidor, Texas. Six persons resided in the two bedroom mobile home: Shirley Knapp, A.K. (the victim), Buddy Knapp, Buddy's wife and daughter, and Peters. Both Buddy and Peters are the sons of Shirley. A.K. is Shirley's granddaughter by birth, and daughter by adoption. Thus, Buddy and Peters are the biological uncles of A.K., but also her brothers by adoption. On the date of the offense, A.K. was thirteen years old. Peters was thirty-four.

On the morning of the offense, Buddy entered Peters' room to wake him up, as they were planning to go on an early morning fishing trip. Upon entering the room and turning on the light, he witnessed Peters and A.K. engaged in oral sex. The police were called and, during the ensuing investigation, A.K., Shirley, and Buddy each spoke with Officer Picard and subsequently gave written statements alleging that Peters had sexually assaulted A.K. Prior to and during the ensuing trial, A.K. recanted her prior oral and written statements. In addition, at trial, both Shirley and Buddy testified they could not remember the events of that morning. At the conclusion of the trial, the jury found Peters guilty of the offense.

## LEGAL SUFFICIENCY

We begin by addressing Peters' sixth point of error in which he argues the evidence is legally insufficient to sustain the conviction for aggravated sexual assault. He asserts the court erred when it refused to grant his motion for an instructed verdict based upon A.K.'s recantation and the insufficiency of the evidence. He contends the evidence does not show that he intentionally or knowingly committed aggravated sexual assault.

### Standard of Review

In reviewing the sufficiency of the evidence, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Santellan v. State*, 939 S.W.2d 155, 160 (Tex.Crim.App.1997). This standard of review remains the same for both direct and circumstantial evidence cases. *See Geesa v. State*, 820 S.W.2d 154, 159–61 (Tex.Crim.App.1991).

## Aggravated Sexual Assault

At the time of the offense, Texas law provided that a person commits an offense if the person intentionally or knowingly causes the penetration of the mouth of a child by the sexual organ of the actor, and if the victim is younger than fourteen years of age.[1] Accordingly, the charge in the instant case instructed the jury on the elements of aggravated sexual assault as follows:

> [I]f you find from the evidence beyond a reasonable doubt that on or about the 25th day of January, 1997 in Orange County, Texas, the Defendant, RONALD LEE PETERS, did intentionally and knowingly cause the penetration of the mouth of A.R.K., a child who was then and there younger than 14 years of age and not the spouse of RONALD LEE PETERS, by the sexual organ of RONALD LEE PETERS, then you will find the defendant "guilty" of the offense of Aggravated Sexual Assault and so say by your verdict.

## Factual Background

### Peters' Statement

We begin our review of the evidence by setting forth Peters' written statement given to the police subsequent to his arrest:

> I was asleep in my bedroom. My bedroom doors were closed. I was sleeping in the nude. I woke up and found [A.K.] on top of me in the bed. .... [A.K.] was giving me head. My brother, Buddy Knapp, walked into the room and found us during the act. He told me to call the police and I did so. I was in my own room with the doors closed and she came into my room and did this without my permission. I told her you better get out of there but that is when my door opened and my brother walked in.

> This is the only time we have had sex of any type during the time I have been living at this address......

The State argues the jury could have determined Peters' guilt based on this statement alone.[2] We disagree. In particular, the statement does not establish that he "intentionally or knowingly" committed the offense.

### The Investigation at the Knapp Home; Prior Inconsistent Statements

Officers Picard and Verrett described the hostile environment they encountered upon their arrival at the Knapp residence. Buddy and Peters were sitting across from one another on a couch. Peters sat quietly while Buddy, described by Picard as "irate" and "upset," angrily made accusations that Peters had molested A.K. Shirley was "upset and nervous," pacing in the kitchen. A.K. was sitting in a chair across from her brothers/uncles and was "crying and upset."

At trial, Picard repeated the oral statements made to him by Shirley, Buddy, and A.K. while at the Knapp residence. Over the defense's hearsay objection, Picard testified that Shirley told him she was on the phone when Buddy came out of Peters' room. She told Picard that Buddy hung up the receiver and "said something to the effect that they had a real problem, they needed to talk now." She told the officer that "Buddy had told her that he had caught [A.K.] giving Ron head."

Picard was informed by Buddy that A.K. had been sexually abused by Peters. Prior to appellant interposing a hearsay objection, Picard testified regarding Buddy's statements to him:

[Prosecutor]:

Q    Did Buddy say anything in response to what Shirley had said?

A    Buddy was saying a lot of things. He was very angry, telling me what he

---

1.  *See* Act of May 29, 1995, 74th Leg., R.S., ch. 318, § 7, 1995 Tex. Gen. Laws 2734, 2737 (amended 1997) (current version at Tex. Pen. Code Ann. § 22.021 (Vernon Supp.1999)).

2.  Peters did not testify at trial.

had discovered them doing. He mentioned 'child molester' and stuff like this. He was wanting to file charges.

Q    What specifically did Buddy tell you that he saw?

A    Buddy told me that he went into the room to wake Ron up to get him up, they were going to go fishing. Said he turned on the light switch, he saw [A.K.] on her knees at the bed, said that Mr. Peters, Ron Peters, was naked and that [A.K.] had his penis in her mouth and she was giving him head."

Q    I want to be real clear on this. Buddy Knapp told you that he saw his penis in [A.K.'s] mouth?

A    Yes, sir, he said he caught them in the act, and I asked him, "Did you?" and he said, "Yes, I did."

Officer Picard testified that while he was questioning the family members about the incident, A.K. was "very upset" and "she was crying." The following testimony of Picard as to A.K.'s statements to him was elicited without objection from the defense:

I asked [A.K] as to what happened and she told me she went in to get her shoes, that Mr. Peters was in bed. He pulled the blanket back, he was naked, they started kissing and one thing led to another.

I said, "What do you mean, one thing led to another?" And she said, "He put his penis in my mouth and I gave him a blow job and Buddy walked in on us." . . . .

All three family members subsequently gave written statements to the police alleging that Peters sexually assaulted A.K. At trial, however, A.K. recanted her former statements, and Buddy and Shirley testified they could not remember the events of the morning of the offense.

*Testimony at Trial*

At trial, Buddy testified that when he walked into the room Peters was lying on the bed naked and A.K. was on her knees by the side of the bed. He testified that he dialed the phone number for the police

and Peters talked to them. He admitted he was angry about what he had witnessed that morning. When further questioned, Buddy testified it was his belief that Peters sexually assaulted A.K. that morning. However, he stated it was his belief at trial that he "might have been going overboard a little bit." Upon further questioning about what he told the police that morning, Buddy stated, "Really, Honestly—to be honest with you, I don't remember a whole heck of lot about that morning. I was kind of under the influence and it's kind of like a haze." Picard testified he did not see any signs of Buddy being intoxicated that morning.

Buddy admitted that he had made a prior written statement and read a portion of it at trial:

"I told [Peters] he could either leave the house by either him, Ron Peters, calling the police department or by me calling the police department." "I'd like to press charges on him for child molestation. . . . I found my sister, [A.K.], on her knees on the floor in front of my brother's bed and performing oral sex on him."

Although Buddy testified he could not remember writing the statement because at the time he was "under the influence," over defense counsel's objections, he did admit to the contents of his statement.

Shirley testified that she "observed nothing" and could not remember what happened that morning. She admitted that she had given a statement to the police, but testified the statement was all based on hearsay.

A.K. testified that the room Peters was staying in was formerly her room and contained her personal effects. She stated she went into the bedroom to get her shoes. She described the incident as follows: "[H]e was asleep, naked, but he had a blanket over him, and I took the blanket off and stuck his penis in my mouth, and he woke up right as my other brother walked in the room." She testified she did

not recall telling Picard that Peters had intentionally put his penis in her mouth.

A.K. admitted that she had given a statement to the police,[3] but testified that after leaving the police station, she realized "how much trouble [Peters] could get in." A.K. also admitted she had told detective Ray Moseley that Peters was smoking a cigarette when she entered the room, that Peters was naked, and that she had asked Peters to stop because it scared her. She also admitted telling the detective that she and Peters had been discussing their relationship. She testified that it was all a lie, however, because she was angry that Peters was dating a woman whom A.K. did not like.

### Analysis

■ The prior oral and written statements of Shirley, Buddy, and A.K. were all made out of court. Such statements are considered hearsay if offered at trial to prove the truth of the matter asserted. *See* TEX.R.CRIM. EVID. 801.[4] The statements do not fall within a hearsay exception and, thus, are admissible solely for the purpose of impeachment. *See* TEX.R.CRIM. EVID. 612(a). "Testimony admitted for impeachment purposes is without probative value and cannot be considered in determining the sufficiency of the evidence to support the conviction." *Goodman v. State*, 665 S.W.2d 788, 792 n. 2 (Tex.Crim. App.1984) (citing *Key v. State*, 492 S.W.2d 514, 516 (Tex.Crim.App.1973)).

With the exception of the testimony regarding A.K.'s statements to Officer Picard and detective Moseley, which were not objected to, the prior statements could not be used by the jury in determining guilt. As impeachment evidence, however, the prior statements reveal the collective inconsistencies of the statements made the day of the offense as compared to those made at trial. This is an important consideration in this case. The inconsistencies of the statements call into question the veracity of the witnesses.

At trial, Buddy testified he could not remember the events of the morning or the statements he had made because he was "under the influence." Officer Picard testified, however, that on the morning of the offense, Buddy was irate and upset and making angry allegations toward Peters. Picard also testified that, in his opinion, Buddy did not appear to be "under the influence" or intoxicated. Buddy admitted at trial that in his statement he expressed his desire to file charges against Peters for "molestation." He also admitted that it was his belief at the time that Peters had sexually assaulted A.K.

Likewise, Shirley's recollection had faded by the time of trial. Although she was observed as "visibly upset" on the morning of the offense and voluntarily admitted she had given a statement, Shirley testified at trial that she was "on major narcotic medication" and "really didn't remember."

The greatest dichotomy was seen in A.K.'s account of the incident. Picard testified that on the morning of the offense, A.K. stated to him that after she walked into the bedroom, Peters "pulled the blanket back, . . . they started kissing, one thing let to another . . . , [and] he put his penis in [her] mouth." At trial, however, she testified Peters was asleep and did not wake up until just as Buddy walked into the room. She admitted at trial to making a written statement, but testified that statement was a lie.

■ The evidence establishing that Peters intentionally or knowingly committed the offense was Picard's testimony describing A.K.'s prior statements to him in which she stated that Peters was awake and

---

3. The details of A.K.'s prior written statement were not revealed at trial.

4. Effective March 1, 1998, the Texas Rules of Criminal Evidence and Texas Rules of Civil Evidence were merged to form the Texas Rules of Evidence. Because this case was tried before the effective date of the new rules, we will apply the former Texas Rules of Criminal Evidence.

participated in the act. In the context of TEX.R.CRIM. EVID. 802, "unobjected to hearsay has probative value of substantive evidence." *Fernandez v. State*, 805 S.W.2d 451, 455, n. 3 (Tex.Crim.App.1991). In this case, the testimony is direct evidence of the crime. *See id.* at 454, n. 2 (testimony by officer reflecting statements made by appellant's wife prior to trial, which were recanted by wife at trial, was direct evidence because it is was "an inference from the assertion of a witness to the truth of the fact asserted...."). Here the jury was permitted to hear testimony regarding Peters' direct participation in the sexual act. The jury was free to consider the hearsay as "probative evidence, to be assessed and weighed along with, and equal to, the other evidence admitted at trial." *Id.* In addition, A.K.'s admission that she told detective Moseley that Peters was naked and smoking a cigarette when she entered the bedroom is also probative evidence. This testimony has the effect of discrediting Peters' prior written statement in which he stated he was asleep when A.K. entered the room.

■ As factfinder, the jury is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991). The jury observed A.K.'s demeanor and the collective inconsistent statements. It was entitled not only to reconcile any conflicts, but even to disbelieve A.K.'s recantation. *See id.* In addition, the prior statements of Buddy and Shirley have an "inherent indicia of trustworthiness" because they were "made closer in time to the event in question." *Fernandez*, 805 S.W.2d at 455, n. 3

■ This court is not to assume the duties of the trier of fact by "reweighing the comparative probative value of the unobjected to hearsay and the declarant's in-court testimony. *Forrest v. State*, 805 S.W.2d 462, 463 (Tex.Crim.App.1991). The relative probative value of this hearsay evidence was assessed by the jury in reaching its verdict. When the jury convicted Peters, it expressed its view that the hearsay evidence was probative. Once a jury has made such an assessment, "an appellate court may not reevaluate the probity of [an] individual item of evidence." *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex.Crim.App.1991). "[T]he appellate court has only the discretion to determine if any rational trier of fact could have, based on the evidence admitted at trial, found the essential elements of the offense beyond a reasonable doubt." *Id.* (quoting *Fernandez*, 805 S.W.2d at 456).

We conclude the evidence is legally sufficient to support the offense of aggravated sexual assault. A rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318, 99 S.Ct. at 2788, 61 L.Ed.2d at 573. Peters' sixth point of error is overruled.

## EXCLUSION OF INVESTIGATOR

■ In his first point of error, Peters argues the trial court abused its discretion by granting the prosecution's request to have the defense's court appointed investigator excluded from the court room. According to Peters, during trial, the prosecutor complained to the trial court that the defense's investigator was sitting in the courtroom. He asserts the court ordered her removal over the defense's objection that she was part of the defense team.

■ After a thorough review of the record, we do not find the prosecutor's statements requesting the removal of the investigator, nor has Peters cited any such record reference. We do find Peters' objection to the removal of the investigator. That objection, however, was not timely. To properly preserve an issue for appellate review, a defendant must make a timely request, objection, or motion, stating the specific grounds for the desired ruling. *See* TEX.R.APP. P. 33.1. The objection must be made at the earliest possible opportunity, as soon as the ground for

objection becomes apparent. *See Lagrone v. State*, 942 S.W.2d 602, 618 (Tex.Crim. App.), *cert. denied*, —— U.S. ——, 118 S.Ct. 305, 139 L.Ed.2d 235 (1997); *Martinez v. State*, 867 S.W.2d 30, 35 (Tex. Crim.App.1993).

In the instant case, the rule was invoked by the court at the beginning of trial. Although it is not clear from the record exactly when the investigator was excluded from trial, Peters' objection to the exclusion of the investigator was not made until after the State had presented its evidence and rested. Therefore, we find the objection was untimely and not preserved for appellate review. Peters' first point of error is overruled.

■ In his second point of error, Peters argues his trial was prejudiced when the prosecutor requested the removal of the investigator within the presence of the jury. He argues the prosecutor's remarks prejudiced the jurors against the defense. As stated above, after a thorough review of the record, we do not find the specific prejudicial remarks to which Peters now complains of, nor has Peters provided citations to the record directing our attention to such. Therefore, this point of error is waived. *See* Tex.R.App. P. 38.1(h).

In his fourth point of error, Peters asserts that if this court determines there was no error preserved on the issue of the investigator's exclusion from the courtroom and its resulting prejudicial effect, then he did not have effective assistance of counsel at trial. He contends the failure of defense counsel to object to the removal of the investigator hindered his arguments on appeal.

We examine ineffective assistance of counsel at the guilt/innocence stage of trial by the standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by Texas in *Hernandez v. State*, 726 S.W.2d 53 (Tex.Crim.App.1986). To prevail on an ineffective assistance of counsel claim, an appellant must first establish that his counsel's representation fell below an objective standard of reasonableness. *Id.* at 55. The appellant must then show a reasonable probability exists that a different outcome would have resulted but for his trial counsel's professional errors. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim.App.1994); *Hernandez*, 726 S.W.2d at 55.

■ The rule governing the exclusion of witnesses is embodied in former Rule 613 of the Texas Rules of Criminal Evidence, which provides:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order on its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a defendant which is not a natural person designated as its representative by its attorney, or (3) *a person whose presence is shown by a party to be essential to the presentation of his cause*, or (4) the victim, unless the victim is to testify and the court determines that the victim's testimony would be materially affected if the victim hears other testimony at the trial.

Tex.R.Crim. Evid. 613 (emphasis added).[5] Sequestration under Rule 613 is not discretionary with the court. *See Moore v. State*, 882 S.W.2d 844, 848 (Tex.Crim.App. 1994). "By its own terms, the court *shall* order the witnesses excluded at the request of a party or on its own motion." *Id.* However, the trial court is given discretion to decide if a witness fits under one of the four exceptions to exclusion. *Id.* When making a determination on the exclusion of a witness, a court should carefully consider "the critical importance of the testimony" of the witness. *See Aguilar v. State*, 739 S.W.2d 357, 359 (Tex.Crim.App.1987).

---

**5.** Currently Tex.R. Evid. 614.

■ The "party seeking an exception under Rule 613 has the burden of showing that one of the enumerated sections is met." *Moore*, 882 S.W.2d at 848. The Rule contains no express exception for investigators. Therefore, it was Peters' burden, as the party seeking exemption from the rule, to make a "showing" that the investigator fell under one of the express exceptions to the rule. Trial counsel's argument fell under the third exception. His argument consisted of the following statement:

> The court placed my court appointed investigator under the rule, and would point out to the court that she was the investigator in this case, she is very knowledgeable of these witnesses, and by her being removed during these additional testimonies under the rule, that this is in violation of Mr. Peters' right to effective counsel under the sixth amendment.

The State argues the trial court properly excluded the investigator because she was a potential witness with personal knowledge of the relevant facts.[6] At trial, in response to Peters' objection, the prosecutor argued as follows:

> Judge, the state has information from the witnesses who were also placed under the rule that they had direct contact with [the investigator]. There was— there was some [sic] allegations regarding her conduct we are concerned with. That still may hold true regarding Shirley Knapp's testimony. I can't anticipate exactly what she's going to say. We have very good reason to place her under the rule and she still is. The defendant is not entitled to an investigator to sit with him at the time of trial.

The State contends it had designated the investigator as a potential witness to the prior oral statements of Buddy, Shirley, and A.K. At the hearing on Peters' motion for new trial, the investigator stated she had conversations prior to trial with various witnesses, including Buddy, Shirley, and A.K. In her conversation with Buddy, Buddy told her that he had a hangover that day and did not remember the morning of the offense. A.K. told her that she (A.K.) was the person initiating the contact between her and Peters. The investigator admitted that if these witnesses would have testified at trial to something other than what they had stated in their prior conversations with her, she might have been called as a witness on behalf of Peters.

Since the investigator was a potential witness in the case, we cannot say that the trial court abused its discretion in excluding her from the courtroom. In light of the discrepancies between the witnesses' prior statements and their subsequent testimonies at trial, along with the prosecutor's explanation to the court that the investigator had direct contact with the witnesses, we cannot say the trial court erred in placing the investigator under the rule. Consequently, Peters has not shown that there is a reasonable probability that the result of the proceeding would have been different absent his counsel's conduct in failing to timely object to the exclusion of the investigator. Peters' fourth point of error is overruled.

### BRADY EVIDENCE

■ In his third point of error, Peters argues his due process rights were violated when the State failed to produce all *Brady* evidence favorable to the defense. He argues the prosecutor had material information regarding A.K.'s recantation and failed to inform the defense of such.

■ "Due process requires the State to disclose exculpatory evidence to one accused of a crime." *Cook v. State*, 940 S.W.2d 623, 626 (Tex.Crim.App.1996) (citing *Brady v. Maryland*, 373 U.S. 83, 83

---

6. We note that, at trial, the investigator was never called to testify as a witness by the state or defense.

S.Ct. 1194, 10 L.Ed.2d 215 (1963)). "[T]he government has the duty to disclose exculpatory evidence, even in the absence of a request by the defendant, if the withheld evidence, considered as a whole, results in a 'reasonable probability' that a different result would have occurred." *Id.* at 626–27 (citing *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 1568–69, 131 L.Ed.2d 490 (1995)). "Impeachment evidence is included within the scope of the term 'exculpatory evidence.'" *McFarland v. State,* 928 S.W.2d 482, 511 (Tex.Crim.App.1996). The failure to disclose impeachment evidence favorable to the defendant, however, is constitutional error "only if its suppression undermines confidence in the outcome of the trial." *Cook,* 940 S.W.2d at 627 (citing *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

The State argues the defense had actual knowledge of the victim's change in position prior to trial. At the hearing on Peters' motion for new trial, the State questioned witnesses regarding the *Brady* issue. A.K.'s testimony establishes that she had spoken with the defense's investigator prior to trial, informing the investigator of her recantation. A.K. testified as follows:

[Prosecutor]:

Q [A.K.], did you have an opportunity to talk to [the investigator]?

A Yes.

Q And when did you speak with her?

A I don't know.

Q In relation to the trial, when did you speak to her, a few days before, a month before?

A I couldn't honestly say. It was some time before the trial.....

. . . .

Q How many times did you speak with her?

A Maybe once or twice.

. . . .

Q Did you tell her what you're saying—Did you tell her that the written statement that you had given to [the police] was not correct?

A Yes, I told her exactly what I told you.

The investigator's testimony at the hearing for the motion for new trial also reflects that A.K. had informed the investigator, prior to trial, of her change in position, and that information was conveyed to defense counsel by the investigator:

[Prosecutor]:

Q Did [A.K.] ever say that the defendant initiated contact?

A No. She said from the very beginning when I talked to her, that she's the one that initiated the contact.

Q [A.K.] told you that she initiated the contact?

A Yes.

Q And you told that to [defense counsel's] office?

A I believe so, yes.

. . . .

Q You told [defense counsel] before trial what [A.K.] said?

A Yes.

Furthermore, the testimony of Peters' trial counsel establishes that the investigator informed him of A.K.'s statement to the investigator:

[Prosecutor]:

Q Did your investigator inform you that [A.K.] stated that the written statement she had given [the police] previously was incorrect?

A That it was a lie, yes.

Q Did your investigator inform you that [A.K.] related to [the investigator] that she initiated sexual contact with her brother, Ronald Lee Peters?

A Yes.....

We conclude the record of the hearing on Peters' motion for new trial indicates the defense had actual knowledge of A.K.'s recantation prior to trial. Therefore, Peters cannot now complain on appeal of the State's failure to disclose the information

to the defense. *See Carmona v. State,* 698 S.W.2d 100, 105 (Tex.Crim.App.1985) ("[I]f the facts not disclosed are known by the defendant or his counsel, he cannot object on appeal to the failure of the State to disclose the same."); *see also Harris v. State,* 453 S.W.2d 838, 839 (Tex.Crim.App. 1970). Since the defense had actual knowledge of the recantation, Peters has failed to show "that a different result would have occurred," or "that the government's failure to disclose the exculpatory evidence undermined confidence in the outcome of the trial." *See Cook,* 940 S.W.2d at 626–27. Peters' third point of error is overruled.

## PRE–ARREST SILENCE

■ In his fifth point of error, Peters contends his fifth amendment right against self-incrimination was violated when a witness commented on the fact that he (Peters) was sitting calmly and quietly after being read his *Miranda* rights. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The testimony Peters complains of is that of Officer Verrett, one of the investigating officers. Specifically, Peters complains about the following statements: [Prosecutor]:

Q    And the location of Ronald Lee Peters was where?

A    Sitting next to Buddy Knapp on the sofa.

. . . .

Q    What was Mr. Buddy Knapp's attitude?

A    He appeared to be angry. When he was talking he was looking over toward Mr. Peters, and Mr. Peters didn't say nothing.

[Defense Counsel]: Objection, Your Honor, I'm going to ask the court to instruct the jury to disregard that comment. That certainly is a violation of defendant's Fifth Amendment and Article I, section 10 of the Texas Constitution.

The Court: The Jury will disregard the witness's last statement.

The State argues Peters was not under arrest at that point in time, nor had his *Miranda* warnings been given. Prior in time to the above elicited testimony, outside the presence of the jury, Officer Picard was questioned about the chronological events leading up to the arrest.

[Defense Counsel]:

Q    Did you at any time give Ron Peters his what we call Miranda warning?

. . . .

A    Officer Verrett did, yes, sir.

Q    Okay. And when did he give that?

A    Once I listened to what Buddy Knapp had to say and I confirmed it with the little girl that it had occurred, [Peters] was placed under arrest. He was in—given his Miranda warning by Officer Verrett and he was transported by Officer Verrett to the police department.

. . . .

[Prosecutor]:

Q    Officer, when you arrived at the house, . . . , no matter who talked to you first, did you at that moment place the defendant under arrest?

A    No, sir, I did not.

. . . .

Q    After Buddy Knapp had spoken to you and told his version of what happened before you spoke to anyone else, did you at that time place the defendant under arrest?

. . . .

A    No, sir. I didn't speak to Mr. Peters at all.

Q    At that moment he was not under arrest?

A    No, sir.

Q    At that moment what was Mr. Peters doing?

A    Mr. Peters was sitting there very quietly like I testified earlier.

Q He has said nothing up at that point?

A He said nothing, and I hadn't asked him nothing.

Q Even after his brother made all these allegations?

A Yes, sir.

Q So you continued your investigation and then you went on to [A.K.], is that right?

A After speaking to Mr. Knapp and what he told me he had witnessed, I spoke to [A.K.].

. . . .

Q . . . . At that moment, . . . , has he said a word?

A No, sir, he hasn't said anything.

Q Is he under arrest yet?

A No, sir, not at that point.

We agree with the State that the officer's testimony was in reference to Peters' silence prior to his arrest and prior to being given his Miranda warnings. "Prearrest silence is a constitutionally permissible area of inquiry." *Waldo v. State*, 746 S.W.2d 750, 755 (Tex.Crim.App.1988) (citing *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980)). No error occurred. Nevertheless, the trial judge sustained appellant's objection and instructed the jury to disregard. In the unlikely event jurors understood the officer's testimony to refer to Peters' post-Miranda silence, the error was cured by the court's instruction to disregard. See id. Peters' fifth point of error is overruled.

AFFIRMED.