NO. 07-05-0113-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



NOVEMBER 30, 2006


______________________________




RONALD R. GREEN, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2004-405,478; HON. JIM BOB DARNELL, PRESIDING


_______________________________



Opinion


_______________________________



Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

 Ronald R. Green appeals his conviction for aggravated sexual assault. He seeks
to overturn it by contending that 1) the evidence is legally and factually insufficient to
sustain it, 2) the trial court erred in refusing to grant his objection to the prosecutor's
wearing of a religious cross on her person, and 3) the trial court erred in granting the
State's motion to invoke the rule against his "parents." We affirm the judgment. 

 

Issues 1 and 2 - Sufficiency of the Evidence 


 In his first two issues, appellant challenges the sufficiency of the evidence to sustain
his conviction. In particular, he argues that it failed to show penetration of the vagina. We
overrule the issues.

 The standards by which we review the sufficiency of the evidence are well
established. We refer the parties to Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979), Watson v. State, No. PD-469-05, 2006 Tex. Crim. App. Lexis 2040
(Tex. Crim. App. October 18, 2006), Zuliani v. State, 97 S.W.3d 589 (Tex. Crim. App.
2003), and King v. State, 29 S.W.3d 556 (Tex. Crim. App. 2000) for an explanation of
those standards. 

 Next, appellant was charged with intentionally and knowingly penetrating the female
sexual organ of a five-year-old child with his finger. Penetration may be established
through circumstantial evidence, Villalon v. State, 791 S.W.2d 130, 133-34 (Tex. Crim.
App. 1990), and the slightest penetration is sufficient to uphold the conviction. Luna v.
State, 515 S.W.2d 271, 273 (Tex. Crim. App. 1974), quoting Nilsson v. State, 477 S.W.2d
592 (Tex. Crim. App. 1972). Penetration includes pushing aside and reaching beneath a
natural fold of skin into an area of the body not usually exposed to view even when one is
naked. Vernon v. State, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). Additionally, the
sexual assault victim need not testify as to penetration. Beckham v. State, 29 S.W.3d 148,
151 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd). 

 While is it true that at trial, the child testified that appellant's finger was outside her
"cookie," as she referred to her sexual organ, she also testified that it hurt "like a rock hit
[her]" when appellant put his finger on her and that it burned and hurt afterward. 
Penetration of the vagina could cause burning, according to the sexual assault nurse who
testified. Moreover, the victim told the sexual assault nurse that appellant put his "little
finger inside [her] cookie." So too did the nurse discover two recent abrasions in the child's
vagina that were consistent with digital penetration. This is some evidence, if believed,
upon which a rational trier of fact could conclude, beyond reasonable doubt that
penetration occurred. See Vernon v. State, supra (holding that the evidence was sufficient
to establish penetration when the victim testified that Vernon touched the "[o]utside" of her
vagina but nonetheless felt him pressing on it and felt pain and discomfort when he did
press). 

 Admittedly, there was evidence of record that the victim's mother had examined the
child's genitals after the child made her outcry, and the nurse testified it was possible the
mother could have caused the abrasions. There was also testimony that the child had 
scratched or touched herself which could likewise have caused them, although the nurse
testified it was unlikely. And, as for the failure of the emergency room physician to find
sexual abuse, the evidence showed that he performed only a visual examination. Yet, the
nurse examiner stated that she utilized a magnifying device to conduct her examination of
the child. That the hymen was also intact, according to the physician, did not negate the
presence of abrasions. Nor does it necessarily suggest that appellant did not touch, push
aside, or reach beneath a natural fold of skin into an area of the body not usually exposed
to view even when one is naked. Indeed, the thrust of his efforts is directed at disparaging
the evidence of abrasion within the vagina. Yet, there need not be such abrasions for
there to be penetration. Again, all that is necessary is slight penetration. Luna v. State,
supra. Moreover, appellant cites us to no evidence suggesting that his hand was not in the
vicinity of his victim's vagina or that he did not touch the organ in such a way to make the
youth feel pain and burning once he stopped.

 In short, the foregoing evidence simply raised issues of fact for the jury to resolve. 
Furthermore, that supporting the verdict was neither weak nor overwhelmed by
contradictory evidence. So, the jury was free to believe the witnesses and evidence it
cared to believe, and we cannot interfere with its prerogative given the state of the record. 
Thus, the verdict had the support of both legally and factually sufficient evidence.

 Issue 3 - Display of Religious Symbol

 In his third issue, appellant contends the trial court erred in overruling his objection
to the prosecutor wearing a small cross around her neck during trial. That act, according
to appellant, purportedly encouraged the jury to find him guilty as "a part of the acceptance
of the religious philosophies adopted and displayed by the government." We overrule the
issue.

 The cross at issue was described as being one inch by one-half inch in size. 
Furthermore, the trial judge had not observed it prior to appellant raising the issue. Nor
could the trial judge see it from a distance of eight feet once he was made aware of it. 
Thus, it was far from obvious or obtrusive.

 Years ago, it was held that the United States Constitution does not require
government to be hostile towards religion. See Zorach v. Clauson, 343 U.S. 306, 313-14,
72 S.Ct. 679, 684, 96 L.Ed. 954, 962 (1952). But, that is the effect of appellant's argument
here.

 Judges wear black robes and sit above those appearing before the court. Litigants
and their counsel wear particular jewelry and clothing to symbolize their viewpoints or
create certain impressions upon those observing them. Pictures of past judges and other
elected officials, statues of notable personalities, engraved gavels, and the like also dot the
walls and spaces of our many courtrooms. Simply put, our halls of justice are awash with
symbolism. To cull and discard from those many symbols an unobtrusive item indicative
of a person's belief in a life superior to that found within the confines of a courtroom would
be nothing short of a hostile act towards religion. While the freedom to believe and evince
one's beliefs may be wasting away in certain environments, we cannot say that the act
complained of here warrants further erosion of personal religious liberty. See Draper v.
Logan County Public Library, 403 F. Supp. 2d 608, 621 (W. D. Ky. 2003) (holding that a
government employee's wearing of an unobtrusive religious symbol did not unduly entangle
the state with religion); Nichol v. Arin Intermediate Unit 28, 268 F. Supp. 2d 536, 554 (W.D.
Pa. 2003) (holding that a teacher's wearing of a small cross while teaching would not be
perceived by her students as endorsing a Christian viewpoint given the other symbolic
jewelry worn at school).

 Issue 4 - Invocation of the Rule 

 Finally, appellant claims error on the part of the trial court in removing his "parents"
from the courtroom upon the State's invocation of the Rule. That purportedly denied him
his right to moral support. We overrule the issue.

 The "parents" in question were appellant's mother, Ruth Corzine, and another
woman named Caroline Edwards. Furthermore, his objection encompassed solely the
presence of his mother. Thus, appellant waived any complaint he had regarding the
exclusion of Edwards. As for Ms. Corzine, the prosecutor stated that she could be a
potential rebuttal witness given that she was mentioned "in CPS reports" detailing
extraneous acts of sexual abuse between appellant and his daughter. Furthermore, the
State notified appellant of its potential use of that evidence at trial. So too had appellant's
counsel alluded to (during his voir dire) Ms. Corzine as being a potential witness, though
he later informed the court that she would not testify. Of note, however, is that while
complaining that his mother would not testify, appellant did not represent that she lacked
knowledge of pertinent facts related to his prosecution or the extraneous offenses
encompassed by the reports. Given these circumstances, we cannot say that the trial
court abused its discretion in excluding Ms. Corzine from the trial as a potential witness. 
See Peters v. State, 997 S.W.2d 377, 385 (Tex. App.-Beaumont 1999, no pet.) (holding
that the trial court did not abuse its discretion in excluding the person from the courtroom
since she was a potential witness). And, the opinion in Addy v. State, 849 S.W.2d 425
(Tex. App.-Houston [1st Dist.] 1993, no pet.), upon which appellant relies, does not cause
us to conclude otherwise. 

 Addy dealt with whether the exclusion of six black friends of Addy denied him his
right to a public trial. Id. at 426. Appellant did not mention that ground as basis for his
objection at bar, however. And, unlike the circumstances here, the prosecutor in Addy did
not know who the six individuals she sought to exclude were. So too did she admit that
she did not know if "they [were] pertinent witnesses." Id. at 427-28. In short, the record
in Addy revealed that the individuals excluded were simply spectators. We have none of
those indicia here. 

 Accordingly, we affirm the judgment of the trial court. 


 Brian Quinn 

 Chief Justice

Publish.



ficient for purposes of
§ 101.101(c).

Actual Notice

 The formal notice requirements of § 101.101(a) do not apply if the governmental unit
has actual notice that death has occurred or that the claimant has received some injury. 
§ 101.101(c). Actual notice to a governmental unit requires knowledge of (1) death, injury,
or property damage; (2) the governmental units's alleged fault producing or contributing to
the death, injury, or property damage; and (3) the identity of the parties involved. Cathey
v. Booth, 900 S.W.2d 339, 340 (Tex. 1995). Actual notice under this provision of the TTCA
requires that the governmental unit have the knowledge or information that it would have
had under the Act's notice provision and a subjective awareness that its alleged or possible
fault could have produced or contributed to the death or claimed injury. Tex. Dep't of
Criminal Justice v. Simons, 140 S.W.3d 338 (Tex. 2004). Mere investigation of an incident
does not provide a governmental unit with the requisite knowledge; however, absolute
certainty is not required. See id. at 339. 

 The City had actual notice that a police cruiser was involved in a motor vehicle
accident, involving a fatality, that occurred on December 7, 2002. Bosler's response to the
City's motion for summary judgment further establishes that officers investigating the
accident were told by an eye-witness, Nakeesha Turner, that immediately prior to the
accident the officer was speeding and "appeared to be traveling at 60 to 65 mph" in a 45
mph zone. Regardless of whether this information was subjectively believed to be true, it
can reasonably be assumed that such information, if pursued, would reveal the City's
alleged or possible fault producing or contributing to the injury. The fact that the City
conducted an extensive investigation, which they believe exonerated Riddle of any
wrongdoing, is evidence itself that the City was on notice of its possible fault. The
investigation in the underlying case is distinguishable from the investigation in Simons. In
the Simons case the investigation gave no indication that the governmental unit was at
fault; whereas, the investigation in this case revealed disputed allegations of fault. The City
cannot simply ignore those facts indicating possible culpability for purposes of claiming lack
of notice pursuant to § 101.101(c). Actual notice is a fact question precluding summary
judgment, whenever the evidence is disputed. Simons, 140 S.W.3d at 348.

 Because the City was aware of the death of Courtney and the injuries to Colton,
they had actual notice of (1) the death or injuries, and (2) the identity of the parties
involved. Furthermore, because the City was aware of the governmental unit's alleged or
possible fault producing or contributing to the death or injury, they had actual notice for
purposes of § 101.101(c). See Cathey, 900 S.W.2d at 340.

Conclusion


 We find that the City of Lubbock received formal written notice of Bosler's claims
pursuant to § 101.101(a), and imputed actual notice pursuant to § 101.101(c). The trial
court erred by granting the City's Motion for Summary Judgment based upon a lack of
notice. 

 Accordingly, that portion of the trial court's summary judgment as to the City of
Lubbock is reversed and the cause is remanded for further proceedings; in all other
respects the judgment is affirmed.


 Patrick A. Pirtle

 Justice
1. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109 (Vernon Supp. 2006). All
section references herein are references to the Texas Tort Claims Act.