NO. 07-05-0113-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

NOVEMBER 30, 2006
_____

RONALD R. GREEN,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2004-405,478; HON. JIM BOB DARNELL, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Ronald R. Green appeals his conviction for aggravated sexual assault. He seeks to overturn it by contending that 1) the evidence is legally and factually insufficient to sustain it, 2) the trial court erred in refusing to grant his objection to the prosecutor's wearing of a religious cross on her person, and 3) the trial court erred in granting the State's motion to invoke the rule against his "parents." We affirm the judgment.

### Issues 1 and 2 - Sufficiency of the Evidence

In his first two issues, appellant challenges the sufficiency of the evidence to sustain his conviction. In particular, he argues that it failed to show penetration of the vagina. We overrule the issues.

The standards by which we review the sufficiency of the evidence are well established. We refer the parties to *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *Watson v. State,* No. PD-469-05, 2006 Tex. Crim. App. LEXIS 2040 (Tex. Crim. App. October 18, 2006), *Zuliani v. State,* 97 S.W.3d 589 (Tex. Crim. App. 2003), and *King v. State,* 29 S.W.3d 556 (Tex. Crim. App. 2000) for an explanation of those standards.

Next, appellant was charged with intentionally and knowingly penetrating the female sexual organ of a five-year-old child with his finger. Penetration may be established through circumstantial evidence, *Villalon v. State,* 791 S.W.2d 130, 133-34 (Tex. Crim. App. 1990), and the slightest penetration is sufficient to uphold the conviction. *Luna v. State,* 515 S.W.2d 271, 273 (Tex. Crim. App. 1974), *quoting Nilsson v. State*, 477 S.W.2d 592 (Tex. Crim. App. 1972). Penetration includes pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view even when one is naked. *Vernon v. State,* 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). Additionally, the sexual assault victim need not testify as to penetration. *Beckham v. State,* 29 S.W.3d 148, 151 (Tex. App.–Houston [14ᵗʰ Dist.] 2000, pet. ref'd).

While is it true that at trial, the child testified that appellant's finger was outside her "cookie," as she referred to her sexual organ, she also testified that it hurt "like a rock hit

2

[her]" when appellant put his finger on her and that it burned and hurt afterward. Penetration of the vagina could cause burning, according to the sexual assault nurse who testified. Moreover, the victim told the sexual assault nurse that appellant put his "little finger inside [her] cookie." So too did the nurse discover two recent abrasions in the child's vagina that were consistent with digital penetration. This is some evidence, if believed, upon which a rational trier of fact could conclude, beyond reasonable doubt that penetration occurred. *See Vernon v. State*, *supra* (holding that the evidence was sufficient to establish penetration when the victim testified that Vernon touched the "[o]utside" of her vagina but nonetheless felt him pressing on it and felt pain and discomfort when he did press).

Admittedly, there was evidence of record that the victim's mother had examined the child's genitals after the child made her outcry, and the nurse testified it was possible the mother could have caused the abrasions. There was also testimony that the child had scratched or touched herself which could likewise have caused them, although the nurse testified it was unlikely. And, as for the failure of the emergency room physician to find sexual abuse, the evidence showed that he performed only a visual examination. Yet, the nurse examiner stated that she utilized a magnifying device to conduct her examination of the child. That the hymen was also intact, according to the physician, did not negate the presence of abrasions. Nor does it necessarily suggest that appellant did not touch, push aside, or reach beneath a natural fold of skin into an area of the body not usually exposed to view even when one is naked. Indeed, the thrust of his efforts is directed at disparaging the evidence of abrasion within the vagina. Yet, there need not be such abrasions for there to be penetration. Again, all that is necessary is slight penetration. *Luna v. State,*

3

*supra*. Moreover, appellant cites us to no evidence suggesting that his hand was not in the vicinity of his victim's vagina or that he did not touch the organ in such a way to make the youth feel pain and burning once he stopped.

In short, the foregoing evidence simply raised issues of fact for the jury to resolve. Furthermore, that supporting the verdict was neither weak nor overwhelmed by contradictory evidence. So, the jury was free to believe the witnesses and evidence it cared to believe, and we cannot interfere with its prerogative given the state of the record. Thus, the verdict had the support of both legally and factually sufficient evidence.

### Issue 3 - Display of Religious Symbol

In his third issue, appellant contends the trial court erred in overruling his objection to the prosecutor wearing a small cross around her neck during trial. That act, according to appellant, purportedly encouraged the jury to find him guilty as "a part of the acceptance of the religious philosophies adopted and displayed by the government." We overrule the issue.

The cross at issue was described as being one inch by one-half inch in size. Furthermore, the trial judge had not observed it prior to appellant raising the issue. Nor could the trial judge see it from a distance of eight feet once he was made aware of it. Thus, it was far from obvious or obtrusive.

Years ago, it was held that the United States Constitution does not require government to be hostile towards religion. *See Zorach v. Clauson*, 343 U.S. 306, 313-14, 72 S.Ct. 679, 684, 96 L.Ed. 954, 962 (1952). But, that is the effect of appellant's argument here.

4

Judges wear black robes and sit above those appearing before the court. Litigants and their counsel wear particular jewelry and clothing to symbolize their viewpoints or create certain impressions upon those observing them. Pictures of past judges and other elected officials, statues of notable personalities, engraved gavels, and the like also dot the walls and spaces of our many courtrooms. Simply put, our halls of justice are awash with symbolism. To cull and discard from those many symbols an unobtrusive item indicative of a person's belief in a life superior to that found within the confines of a courtroom would be nothing short of a hostile act towards religion. While the freedom to believe and evince one's beliefs may be wasting away in certain environments, we cannot say that the act complained of here warrants further erosion of personal religious liberty. *See Draper v. Logan County Public Library,* 403 F. Supp. 2d 608, 621 (W. D. Ky. 2003) (holding that a government employee's wearing of an unobtrusive religious symbol did not unduly entangle the state with religion); *Nichol v. Arin Intermediate Unit 28,* 268 F. Supp. 2d 536, 554 (W.D. Pa. 2003) (holding that a teacher's wearing of a small cross while teaching would not be perceived by her students as endorsing a Christian viewpoint given the other symbolic jewelry worn at school).

### Issue 4 - Invocation of the Rule

Finally, appellant claims error on the part of the trial court in removing his "parents" from the courtroom upon the State's invocation of the Rule. That purportedly denied him his right to moral support. We overrule the issue.

The "parents" in question were appellant's mother, Ruth Corzine, and another woman named Caroline Edwards. Furthermore, his objection encompassed solely the

5

presence of his mother. Thus, appellant waived any complaint he had regarding the exclusion of Edwards. As for Ms. Corzine, the prosecutor stated that she could be a potential rebuttal witness given that she was mentioned "in CPS reports" detailing extraneous acts of sexual abuse between appellant and his daughter. Furthermore, the State notified appellant of its potential use of that evidence at trial. So too had appellant's counsel alluded to (during his voir dire) Ms. Corzine as being a potential witness, though he later informed the court that she would not testify. Of note, however, is that while complaining that his mother would not testify, appellant did not represent that she lacked knowledge of pertinent facts related to his prosecution or the extraneous offenses encompassed by the reports. Given these circumstances, we cannot say that the trial court abused its discretion in excluding Ms. Corzine from the trial as a potential witness. *See Peters v. State,* 997 S.W.2d 377, 385 (Tex. App.–Beaumont 1999, no pet.) (holding that the trial court did not abuse its discretion in excluding the person from the courtroom since she was a potential witness). And, the opinion in *Addy v. State,* 849 S.W.2d 425 (Tex. App.–Houston [1st Dist.] 1993, no pet.), upon which appellant relies, does not cause us to conclude otherwise.

*Addy* dealt with whether the exclusion of six black friends of Addy denied him his right to a public trial. *Id.* at 426. Appellant did not mention that ground as basis for his objection at bar, however. And, unlike the circumstances here, the prosecutor in *Addy* did not know who the six individuals she sought to exclude were. So too did she admit that she did not know if "they [were] pertinent witnesses." *Id.* at 427-28. In short, the record in *Addy* revealed that the individuals excluded were simply spectators. We have none of those indicia here.

6

Accordingly, we affirm the judgment of the trial court.


                                        Brian Quinn
                                        Chief Justice
Publish.