Affirmed and Majority Opinion and Concurring and Dissenting Opinion
filed November 29, 2007








 

Affirmed and Majority Opinion and Concurring and Dissenting
Opinion filed November 29, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01227-CR

____________

 

CESAR ANDRADE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 228th
District Court

Harris County, Texas

Trial Court Cause No. 754,997

 



 

M A J O R I T Y   O P I N I O N

A jury found appellant, Cesar Andrade, guilty of murder. 
Tex. Penal Code Ann. ' 19.02 (Vernon 2003).  The jury assessed
appellant=s punishment at fifty-five years= confinement in
the Institutional Division of the Texas Department of Criminal Justice and a
$10,000.00 fine.  The trial court sentenced appellant accordingly.  Finding no
reversible error, we affirm.

 








Factual and Procedural Background

Appellant, accompanied by his girlfriend, was driving a
white Nissan pickup truck when it collided with a gray Ford Tempo driven by
Margarito Alberto Resendez, the nineteen year-old complainant.  Appellant
lowered his window, reached under his seat and removed a small, silver or
chrome revolver, and fired approximately five shots at the complainant. 
Appellant then drove off and continued to his girlfriend=s apartment.  The
complainant died as a result of gunshot wounds to his chest and posterior right
upper arm through the chest.  Upon learning the police were investigating the
murder, appellant fled the country to El Salvador.  Appellant had returned to
Houston by 2000, but later moved to California where he was arrested and
convicted on other charges.  Following his conviction for attempted murder in
California, appellant was brought back to Texas for trial.

During the entirety of his trial, appellant was represented
by his counsel of record, Abraham Fisch.  During the punishment phase of the
trial, an additional attorney, R. Scott Shearer, appeared to assist Mr. Fisch. 
While questioning a witness, Mr. Shearer asked the court to allow him to make
an offer of proof on testimony the trial court had excluded in response to an
objection made by the prosecution.  The trial court denied that request.  Mr.
Shearer then passed the witness and the prosecution also passed the witness. 
The trial court then excused the witness.  At that point, Mr. Shearer again
asked the court to make an offer of proof, which the court denied and
instructed Mr. Shearer to sit down.  When Mr. Shearer  objected once again to
the trial court=s refusal to allow him to make an offer of
proof, the trial court ordered him ejected from the courtroom for violating the
court=s rule against
arguing with the court.  This entire episode occurred in the presence of the
jury.  Mr. Fisch was present for the entire punishment phase of appellant=s trial.  

The jury found appellant guilty of murder and he was
sentenced to fifty-five years= confinement in the Institutional Division
of the Texas Department of Criminal Justice and was fined $10,000.00.  This
appeal followed.








Discussion

Appellant raises six issues in this appeal.  In his first
issue, appellant asserts the trial court=s ejection, during
the punishment phase of the trial, of one of his attorneys, violated his right
to counsel under both the United States and Texas constitutions.  In his second
issue,  appellant contends the trial court=s ejection, during
the punishment phase of the trial, of one of his attorneys, violated his right
to a public trial under both the United States and Texas constitutions.  In his
third issue, appellant argues the trial court committed reversible error when it
allegedly prevented appellant from making offers of proof during trial.  In his
fourth issue, appellant contends the trial court erred when it admitted into
evidence a photograph of appellant holding two handguns.  In his fifth issue,
appellant contends the trial court erred when it overruled his objections to
allegedly improper jury argument by the prosecution.  Finally, in his sixth
issue, appellant contends the trial court erred when it admitted into evidence,
during the punishment phase of the trial, two handguns found in appellant=s possession
during the early stages of the investigation of complainant=s murder.  We
address each issue in turn.

A.      The Trial
Court Did Not Violate Appellant=s Right to
Retained Counsel of His Choice When It Ordered One of Appellant=s Attorneys
Forcibly Removed From the Courtroom

In his first issue, appellant contends the trial court
denied appellant his right to counsel of his choice in violation of the Sixth
Amendment to the United States Constitution and Article I, Section 10, of the
Texas Constitution when it ejected one of appellant=s attorneys  from
the courtroom.[1] 
We disagree.








Initially, we must determine whether the trial court=s ejection of one
of appellant=s attorneys, deprived appellant of his attorney of
choice.  The right to select counsel of one=s choice is considered
the core meaning of the Sixth Amendment=s guarantee of the
right to counsel.  United States v. Gonzalez-Lopez, --- U. S.---, 126
S.Ct. 2557, 2563, 165 L.Ed.2d 409 (2006).  A trial court=s erroneous
deprivation of this right is structural error and not subject to harmless-error
analysis.  Id., 126 S.Ct. at 2564, 2566.  The error requires automatic
reversal on appeal.  Id.

          Here,
the trial court initially appointed Patricia Segura as counsel to represent
appellant during the trial.[2] 
Soon thereafter, appellant filed a motion to substitute Mr. Fisch as his
attorney of record.  The trial court granted appellant=s motion and Mr.
Fisch replaced Ms. Segura as appellant=s attorney of
record.  Appellant filed no further motions to substitute counsel.  In
addition, appellant did not bring any complaints regarding Mr. Fisch=s performance as
his attorney of record to the attention of the trial court.[3] 
The appellate record establishes that Mr. Fisch remained appellant=s attorney of
record throughout the entire trial and was present for the entirety of
appellant=s trial.  On the sixth and final day of appellant=s trial, the
punishment phase, Mr. Shearer appeared in the trial court.  Mr. Shearer had
been retained by appellant as his appellate counsel and to assist Mr. Fisch
during the trial.  The trial court granted Mr. Shearer permission to assist Mr.
Fisch.  As detailed above, it was at the end of Mr. Shearer=s questioning of a
witness early in the punishment phase, that he was ejected from the courtroom
by the trial court.  After Mr. Shearer was ejected, Mr. Fisch handled the
remainder of the trial.  Mr. Shearer argued appellant=s motion for new
trial and is appellant=s attorney of record in this appeal.








The trial court did not violate appellant=s Sixth Amendment
right to retained counsel of his choice.  Under the Sixth Amendment, a criminal
defendant can retain multiple attorneys based on the attorney=s specialized
skills.  See Kozacki v. Knize, 883 S.W.2d 760, 763 (Tex. App.CWaco 1994,
(original proceeding)) (recognizing constitutionally protected right of a
criminal defendant to retain specialized counsel of their choice to handle a
particular portion of a criminal proceeding).  Here, appellant exercised that
right and retained two separate attorneys, one for trial and one for appeal. 
As stated above, Mr. Fisch, appellant=s counsel of
choice for trial, was present throughout his entire trial.  Therefore, the
trial court did not deprive appellant of his counsel of choice under the Sixth
Amendment.[4] 
We overrule appellant=s first issue. 

B.      The Trial
Court Did Not Violate Appellant=s Right to A
Public Trial When It Ordered One of Appellant=s Attorneys
Forcibly Removed From the Courtroom

In his second issue, appellant asserts he was denied the
right to a public trial guaranteed by the Sixth Amendment to the United States
Constitution and Article I, Section 10, of the Texas Constitution when
the trial court ejected one of appellant=s attorneys from
the courtroom.[5]








 

Public trials have played an important role in the
administration of justice in this country and have their roots in our English
common law heritage.  In re Oliver, 333 U.S. 257, 266, 68 S.Ct. 499,
504, 92 L.Ed. 682 (1948).  The value of the openness lies in the fact that
people not actually attending trials can have confidence that standards of
fairness are being observed.  Press-Enterprise Co. v. Superior Court of
California, 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629 (1984). 
The sure knowledge that anyone is free to attend gives assurance that
established procedures are being followed and that deviations will become
known.  Id.  The requirement of a public trial is for the benefit of the
accused.  Waller v. Georgia, 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81
L.Ed.2d 31 (1984).  The public is able to see that the accused is fairly dealt
with and not unjustly condemned.  Id.  The presence of spectators also
ensures the accused=s triers are aware of their responsibility
and its importance.  Id.   A public trial also ensures that the judge
and prosecutor carry out their duties responsibly and it encourages witnesses
to come forward and discourages perjury.  Id.  The right to a public
trial is not absolute however.  Addy v. State, 849 S.W.2d 425, 429 (Tex.
App.CHouston [1st
Dist.] 1993, no writ).  The right to a public trial must be balanced against
other interests essential to the administration of justice.  United States
v. Osborne, 68 F.3d 94, 98 (5th Cir. 1995).








The barring of some members of the public from the
courtroom does not necessarily mean that an accused has been denied a public
trial.  Hernandez v. State, 914 S.W.2d 218, 221 (Tex. App.CEl Paso 1996, pet.
ref=d).  In the case
at bar, the trial court did not totally close the courtroom to all spectators,
instead, it ordered the removal of a single person, one of appellant=s attorneys, for
violating a standing procedural order by arguing with the trial court.  This
fact distinguishes this case from the authority cited by appellant.  For
example, in Waller v. Georgia, the leading case cited by appellant, the
Supreme Court addressed a total closure of a courtroom when it adopted the
following test for determining when a defendant=s right to a
public trial is outweighed by other considerations: (1) a party seeking to
close a court proceeding must advance an overriding interest that is likely to
be prejudiced; (2) the closure must be no broader than necessary to protect
that interest; (3) the trial court must consider reasonable alternatives to
closing the proceeding; and (4) it must make findings adequate to support the
closure.  Waller, 467 U.S. at 45, 104 S.Ct. at 2215.  In Osborne,
the Fifth Circuit addressed a similar situation to the case at bar when it
distinguished Waller, found it applied only to total closures, and
adopted a modified version of the Waller factors for cases involving
only a partial closure of a courtroom.  Osborne, 68 F.3d at 98B99.  The Fifth
Circuit determined that there must only be a Asubstantial reason@ for the partial
closure.  Id.

Here, the trial court ejected Mr. Shearer when he continued
to argue with the trial court in violation of the trial court=s standing
procedural orders.  Appellant has cited no authority holding that such an
ejection of a party=s attorney equates to a partial closing of
a courtroom to the public.  Assuming without deciding that is the case, we find
that a trial court=s authority to keep order in the courtroom
is a Asubstantial reason@justifying the
partial closure.  See United States ex. rel. Orlando v. Fay, 350 F.2d
967, 971 (2nd Cir. 1965) (holding the guarantee of a public trial means only
that the public must be freely admitted so long as those persons and groups who
make up the public remain silent and behave in an orderly fashion so that the
trial may continue).  As the trial court did not violate appellant=s constitutional
right to a public trial, we overrule appellant=s second issue.

C.      The Trial
Court=s Handling of Appellant=s Requests to Make
Offers of Proof Was Harmless Error








In his third issue, appellant contends the trial court
committed reversible error when it repeatedly denied appellant the opportunity
to make offers of proof prior to the charge being read to the jury during the
guilt/innocence phase of appellant=s trial.[6] 
We disagree that the trial court committed reversible error.

Texas Rule of Evidence 103(b) provides that an Aoffering party
shall, as soon as practicable, but before the court=s charge is read
to the jury, be allowed to make, in the absence of the jury, its offer of
proof.@  Tex. R. Evid. 103(b).  The right to make an offer of
proof is absolute; a trial court does not have discretion to deny a request to
perfect a bill of exception.  Kipp v. State, 876 S.W.2d 330, 333 (Tex.
Crim. App. 1994).  Normally, the remedy for such an error is not, as appellant
contends, a new trial, but to abate the appeal to permit counsel to develop the
appellate record.  Spence v. State, 758 S.W.2d 597, 599B600 (Tex. Crim.
App. 1988).  The failure to allow a bill of exception or an offer of proof is
subject to a harm analysis.  Williams v. State, 964 S.W.2d 747, 753
(Tex. App.CHouston [14th Dist.] 1998, pet. ref=d).

The evidence is undisputed that the trial court denied
appellant the opportunity, despite numerous requests, to make an offer of proof
regarding the excluded testimony of Robert Baldwin, a ballistics expert with
the Houston Police Department Crime Lab, prior to the charge being read to the
jury during the guilt/innocence phase of the trial.  It is also undisputed that
the trial court ultimately allowed appellant the opportunity to make an offer
of proof on Baldwin=s excluded testimony prior to the charge
being read to the jury during the punishment phase of the trial.  Accordingly, while the trial court erred
when it prevented appellant from making an offer of proof prior to the charge
being read to the jury during the guilt/innocence phase of his trial, the error
was harmless because appellant was ultimately allowed to make his offer of
proof.  Id.








Another witness in the trial was Officer Glen Riddle, the
crime scene investigator for the Resendez murder investigation.  During
appellant=s cross-examination of Officer Riddle, the trial court
sustained the State=s objection to appellant=s question about
problems in the Houston Police Department Crime Lab=s operations.  The
trial court then permitted appellant to start making an offer of proof
regarding Officer Riddle=s excluded testimony but soon thereafter
stopped the offer, stating appellant would be allowed to finish making his
offer of proof at the end of the trial.  Appellant did not object to the trial
court stopping his offer of proof.  In addition, appellant did not seek to
resume his offer at any later point during the trial.  Because appellant did
not object to the trial court=s handling of the Officer Riddle offer of
proof, he has failed to preserve that issue for appellate review.  See Tex.
R. App. P. 33.1(a); Nino v.
State, 223 S.W.3d 749, 755 (Tex. App.CHouston [14th
Dist.] 2007, no pet.).

Appellant
also contends the trial court denied him the opportunity to make an offer of
proof regarding the excluded testimony of Xavier Avila, the detective
investigating the murder.  Appellant properly objected to the trial court=s action prohibiting the making of an
offer of proof regarding Detective Avila=s excluded testimony.  As appellant
had an absolute right to make an offer of proof regarding the excluded
testimony of Detective Avila, the trial court erred when it prohibited
appellant from making his offer.  Kipp, 876 S.W.2d at 333.  However, as appellant has not raised an
issue in this appeal arguing the trial court erred in excluding Detective Avila=s testimony, an
abatement to permit counsel to develop the appellate record would serve no
purpose as it would not result in the development of any information relevant
to this appeal.  See Rivera v. State, 981 S.W.2d 336, 341 (Tex. App.CHouston [14th
Dist.] 1998, no pet.) (the court of appeals (1) held that the trial court=s refusal to allow
an offer of proof was harmless error because the defendant had not raised an
issue on appeal regarding the excluded testimony thus making an abatement
futile; and (2) refused to allow the defendant to raise new issues on appeal
through supplemental briefing).  Therefore, the error is harmless.  We overrule
appellant=s third issue.[7]








D.      The Trial
Court Did Not Abuse Its Discretion When it Admitted Into Evidence a Photograph
of Appellant Holding Two Handguns

In his fourth issue, appellant contends the trial court
erred when it admitted a photograph, State=s Exhibit 41,
showing appellant holding two handguns, one of which was identified as the
murder weapon, because (1) the photograph was not relevant; (2) the probative
value was substantially outweighed by its prejudicial effect; and (3) the
admission of the photograph denied appellant the presumption of innocence.

1.       The
Standard of Review 








Evidence is relevant if it has any tendency to make the
existence of any fact of consequence to the determination of the action more
probable or less probable than it would be without the evidence.  Tex. R. Evid.
401.  The admission of relevant evidence is largely left to the discretion of
the trial court.  Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App.
1993).  Absent an abuse of discretion, the trial court=s decision will
not be reversed on appeal.  Id.  Although relevant, evidence may be
excluded if its probative value is substantially outweighed by the danger of
unfair prejudice.  Tex. R. Evid. 403.  Therefore, upon further objection from
the opponent of the evidence based on Rule 403, the trial court must weigh the
probativeness of the evidence against the potential for unfair prejudice.  Montgomery,
810 S.W.2d at 389.  In keeping with the presumption of admissibility of
relevant evidence, there is a presumption that relevant evidence is more
probative than prejudicial.  Santellan v. State, 939 S.W.2d 155, 169
(Tex. Crim. App. 1997).  The trial court=s ruling whether
to exclude evidence under Rule 403 is also measured by an abuse of discretion
standard and will not be reversed if the ruling is within the zone of
reasonable disagreement.[8]
 Montgomery, 810 S.W.2d at 391.

2.       The
Photograph Was Relevant

The State had the burden to prove appellant caused
complainant=s death by shooting him with a deadly weapon.  Dwayne
Wolf, Deputy Chief, Harris County Medical Examiner=s Office,
testified State=s Exhibit 55 was recovered from
complainant=s rib.  Robert Baldwin, the ballistics expert from the
Houston Police Department Firearms Laboratory, testified State=s Exhibit 55 was a
bullet, either a .38 special or a .357 magnum cartridge.  Baldwin also
testified that the most common type of firearm that would fire State=s Exhibit 55 would
be a revolver.  Finally, Baldwin testified that he could not testify that the
bullet had definitely been fired from a revolver or semi-automatic handgun. 
Appellant=s girlfriend testified she witnessed appellant commit
the murder with a small revolver.  She went on to testify that State=s Exhibit 41 is a
photograph of appellant holding the same silver or chrome revolver he used to
commit the murder.  Detective Avila testified that State=s Exhibit 41
depicts what appears to be a short-barrel, hammerless revolver, probably a
.38.  State=s Exhibit 41, a photograph of appellant holding the
murder weapon, has a tendency to make the existence of a fact of consequence 
to the determination of the action, i.e. the person who committed the murder,
more probable than it would be without the evidence.  Therefore, State=s Exhibit 41 was
relevant and the trial court did not abuse its discretion in admitting it into
evidence.

 








3.       The
Probative Value of the Photograph is Not Substantially Outweighed by  the
Danger of Unfair Prejudice

In addition, the probative value of State=s Exhibit 41 was
not substantially outweighed by the danger of unfair prejudice, confusion of
the issues, or misleading the jury.  Relevant evidence may still be excluded by
the trial court under Rule 403 Aif its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence.@  Tex. R. Evid.
403.  When a trial court balances the probative value of the evidence against
the danger of unfair prejudice, a presumption exists that favors the evidence=s probative
value.  Feldman v. State, 71 S.W.3d 738, 754B55 (Tex. Crim.
App. 2002).  The relevant criteria for determining whether the prejudice of
admitting the evidence substantially outweighs the probative value include the
following: (1) the probative value of the evidence; (2) the potential the
evidence has to impress the jury in an irrational but nevertheless indelible
way; (3) the time needed to develop the evidence; and (4) the proponent=s need for the
evidence to prove a fact of consequence.  State v. Mechler, 153 S.W.3d
435, 440 (Tex. Crim. App. 2005).  If the record reveals one or more of these
considerations led to a risk that the probative value of the evidence was
substantially outweighed by the danger of unfair prejudice, then an appellate
court should conclude the trial court abused its discretion in admitting the
evidence.  See Reese v. State, 33 S.W.3d 238, 241 (Tex. Crim. App.
2000).








We start with an examination of the probative value of the
evidence.  A photograph of the appellant in possession of the same handgun used
to commit the murder is highly probative of appellant having committed the
murder.  Next, we examine whether the evidence has the potential to impress the
jury in an irrational but nevertheless indelible way.  Rule 403 does not
exclude all prejudicial evidence; if it did, all of the State=s evidence would
be excluded as that is the purpose behind all of the State=s evidence. 
Instead, Rule 403 focuses only on the danger of unfair prejudice and the
tendency to tempt the jury into finding guilt on grounds apart from proof of
the offense charged.  Mechler, 153 S.W.3d at 440.  While the photograph
was certainly prejudicial to appellant, it relates directly to the charged
offense of murder.  We find that the photograph does not have a great potential
to impress the jury in an irrational way and would not tempt the jury into a
finding of guilt on improper grounds.  

The third criteria used to determine whether the prejudice
of admitting the evidence substantially outweighs the probative value is the
amount of time needed to develop the contested evidence, during which the jury
will be distracted from the indicted offense.  Id. at 441.  The time
involved in the introduction of the photograph was minimal, and was thus
unlikely to distract the jury from considering the charged offense.  We find
that this factor does not weigh against admitting the evidence.  

The fourth and final factor used to determine whether the prejudice
in admitting the photograph substantially outweighs the probative value focuses
on the proponent=s need for the evidence to prove a fact of
consequence.  This factor encompasses whether the proponent has other evidence
establishing this fact and whether this fact is related to a disputed issue.  Id. 
The photograph was certainly related to a disputed issue: the identity of the
murderer.  The State also demonstrated a need for the evidence: to connect
appellant with the murder weapon.  Evaluating the above four factors and
balancing the prejudicial nature of the photograph against its probative value,
we conclude the probative value of the photograph is not substantially
outweighed by its prejudicial effect.  Accordingly, the trial court did not
abuse its discretion in admitting State=s Exhibit 41.

 

 








4.       The
Admission of State=s Exhibit 41 Did
Not Deny Appellant the Presumption of Innocence

Under the Due Process Clause of the Fourteenth Amendment,
an accused in state court has the right to the presumption of innocence, i.e.,
the right to be free from criminal conviction unless the prosecution can prove
the defendant=s guilt beyond a reasonable doubt by probative
evidence adduced at trial.  Miles v. State, 204 S.W.3d 822, 825 (Tex.
Crim. App. 2006), cert. denied, 127 U.S. 1496 (2007).  Ordinary rules of
evidence, by simply permitting evidence to be admitted at trial, do not subvert
the presumption of innocence because they do not concern whether the admissible
evidence is sufficient to overcome the presumption of innocence.  Carmel v.
Texas, 529 U.S. 513, 533, 120 S.Ct. 1620, 1633 n.23, 146 L.Ed.2d 577
(2000).  As discussed above, State=s Exhibit 41 was
properly admitted into evidence pursuant to the Texas Rules of Evidence; the
admission of such evidence therefore did not deny appellant the presumption of
innocence.

Having addressed and rejected each argument raised under
appellant=s fourth issue, we overrule appellant=s fourth issue on
appeal.

E.      The State
Did Not Engage in Improper Jury Argument During the Punishment Phase of the
Trial








In his fifth issue, appellant contends the trial court
erred when it overruled his objections to the State=s closing argument
in the punishment phase of the trial.  During closing argument, the State may
properly address the following areas: (1) summations of the evidence; (2)
reasonable deductions from the evidence; (3) responses to the defendant=s argument; and
(4) a plea for law enforcement.  Lagrone v. State, 942 S.W.2d 602, 619
(Tex. Crim. App. 1997).  Appellant asserts that during her closing argument,
the State=s prosecutor twice improperly commented on appellant=s failure to
testify when she referred to appellant=s lack of
remorse.  In appellant=s view, the prosecutor=s comments
violated the Fifth Amendment to the United States Constitution, article I,
Section 10 of the Texas Constitution, and article 38.08 of the Texas Code of
Criminal Procedure.[9]

  A comment by the prosecutor on a defendant=s failure to show
remorse can sometimes be a comment on his failure to testify.  Garcia v.
State, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004).  However, it is well
settled that a prosecutor=s comment amounts to a comment on a
defendant=s failure to testify only if the prosecutor manifestly
intends the comment to be, or the comment is of such character that a typical
jury would naturally and necessarily take it to be, a comment on the defendant=s failure to
testify.  Wead v. State, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004).  To
violate the right against self-incrimination, the offending language must be
viewed from the jury=s standpoint and the implication that the
comment referred to the defendant=s failure to
testify must be clear.  Bustamente v. State, 48 S.W.3d 761, 765 (Tex.
Crim. App. 2001).  It is not sufficient that the language might be construed as
an implied or indirect allusion.  Id.  The test is whether the language
used was manifestly intended or was of such a character that the jury would
necessarily and naturally take it as a comment on the defendant=s failure to
testify.  Id.  In applying this standard, the context in which the
comment was made must be analyzed to determine whether the language used was of
such a character.  Id.








In the first alleged reference to appellant=s failure to
testify, the prosecutor was summarizing the evidence in direct response to
appellant=s wife=s testimony, during the punishment phase,
that, despite the fact appellant had pled guilty to attempted murder, he had
acted in self-defense when he stabbed a person outside a California comedy club
and had not voluntarily pled guilty.[10] 
This argument was a proper summation of the evidence and at worst, was only an
indirect allusion that might refer to appellant=s failure to
testify and which does not intrude on appellant=s right against
self-incrimination and therefore does not require reversal.  Cannon v. State,
691 S.W.2d 664, 677 (Tex. Crim. App. 1985).








While a closer call due to the prosecutor=s reference to a
lack of remorse by appellant, appellant=s contention
regarding the second allegedly improper argument is also without merit.  In the
second incident, the prosecutor was making a plea for law enforcement.[11] 
The argument was made in support of the prosecutor=s plea for a
sixty-year sentence and she summarized the evidence with respect to appellant=s conduct in
committing the murder at issue here, fleeing the country, and then committing
the attempted murder in California.  Because the prosecutor=s comments (1)
were supported by the evidence heard by the jury during the trial; (2) used a
summary of that evidence as part of a call for law enforcement; and (3) was not
a direct comment on appellant=s failure to testify, the prosecutor=s argument did not
infringe on appellant=s right against self-incrimination.  Garcia,
126 S.W.3d at 924.  We overrule appellant=s fifth issue on
appeal.

F.       The Trial
Court Did Not Abuse Its Discretion When it Admitted Into Evidence During the
Punishment Phase of the Trial, Two Handguns Found in Appellant=s Possession

During the punishment phase of the trial, the State sought
to admit into evidence two handguns found in appellant=s possession early
in the murder investigation.  Neither handgun was the murder weapon.  Appellant
objected that the handguns were not relevant.  The trial court overruled the
objection and admitted the handguns into evidence.  Appellant now contends that
was an abuse of the trial court=s discretion.








During the punishment phase, evidence may be offered as to
any matter the court deems relevant to sentencing.  See Tex. Code Crim. Proc.
Ann. art. 37.07, ' 3(a)(1) (Vernon 2006).  Sentencing
presents different issues than a verdict of guilt or innocence because the jury
or trial judge chooses from a punishment range rather than deciding whether a defendant
is guilty.  Rogers v. State, 991 S.W.2d 263, 265 (Tex. Crim. App.
1999).  In ascertaining what is relevant to sentencing, the focus is on what is
helpful to a jury in deciding an appropriate sentence for a defendant.  Erazo
v. State, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004).  Admissibility of
evidence at the punishment phase of a non-capital felony offense is a function
of policy rather than relevancy.  Id.  This is so because by and large,
there are no discreet factual issues at the punishment stage.  Id. 
Because the material issue at punishment is so indistinct, relevancy of
proffered evidence cannot be determined by deductive processes.  Sunbury v.
State, 88 S.W.3d 229, 233 (Tex. Crim. App. 2002).  Some of the policy
reasons to be considered when determining whether to admit punishment evidence
include giving complete information for the jury to tailor an appropriate
sentence for the defendant; the policy of optional completeness; and admitting
the truth in sentencing.  Id. at 233B34.  The
circumstances of the offense itself or the defendant himself will be admissible
at the punishment phase.  Miller-El v. State, 782 S.W.2d 892, 896 (Tex.
Crim. App. 1990). 

Evidence that one week after the murder appellant possessed
two handguns, one in  the truck used in the commission of the murder and one in
his bedroom, was relevant to sentencing.  See Stewart v. State, No
09-01-536-CR, 2003 WL 1571547, at *5 (Tex. App.CBeaumont March 26,
2003, pet. ref=d) (not designated for publication) (evidence of a
traffic stop in which the defendant was carrying a loaded pistol in the vehicle
was relevant to consideration of the defendant=s dangerousness
and informative to the jury tailoring the sentence); McFarland v. State,
No. 05-00-00735-CR, 2001 WL 1069643, at *3 (Tex. App.CDallas Sept. 14,
2001, pet. ref=d) (not designated for publication) (photograph of the
defendant holding a shotgun and having a pistol tucked in his waistband, while
on parole, was relevant because it provided useful information for the jury to
use in determining the defendant=s sentence); Keen
v. State, No. 05-98-01381-CR, 2000 WL 222256, at *7B*8 (Tex. App.CDallas Feb. 28,
2000, pet. ref=d) (not designated for publication) (evidence of
weapons and ammunition found in the defendant=s truck was
admissible for jury to consider in the exercise of unfettered discretion to
assess the defendant=s punishment).  Because the handguns were
relevant to sentencing, we overrule appellant=s sixth and final
issue.

 

 








Conclusion

Having overruled each of appellant=s issues on
appeal, we affirm the judgment of the trial court.

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Majority Opinion and Concurring and Dissenting Opinion filed November 29,
2007.

Panel consists of
Justices Anderson, Fowler, and Frost.(Frost, J. files Concurring and Dissenting
Opinion.)

Publish C Tex. R. App. P. 47.2(b).









[1]  Because appellant has not provided any explanation or authority for
construing the Texas Constitution as conferring greater protection in this area
of the law than the federal constitution, we will not address his state
constitutional argument.  See Black v. State, 26 S.W.3d 895, 896 n.4
(Tex. Crim. App. 2000).  In addition, we
have not been asked in this issue to evaluate the propriety of the trial court
ejecting Mr. Shearer from the courtroom  except to the extent such action may
have violated appellant=s constitutional right to counsel of his choice.  





[2]  While there was an order appointing trial counsel
for appellant entered by the trial court, there is no AAffidavit of Indigency@ or other evidence in the appellate record establishing that appellant
was indeed indigent and financially unable to employ counsel.





[3]  Appellant has also not brought an issue in this
appeal alleging that Mr. Fisch was ineffective.





[4]  To the extent appellant=s first issue can be construed as arguing the trial
court erred when it did not give a limiting instruction that the trial court=s ejection of Mr. Shearer should not be held against
appellant, that issue was not preserved for appellate review as appellant
failed to make a request for such an instruction at that time.  Tex. R. App. P. 33.1.





[5]  Because there is no significant textual difference in the  language
guaranteeing the right to a public trial in the Sixth Amendment to the United
States Constitution and Article 1, section 10 of the Texas Constitution, we
will not construe the Texas Constitution as conferring any greater protection
to a criminal defendant than the federal constitution.  See Fletcher v.
State, No. 14-96-01158-CR, 1998 WL 651616, at *2 (Tex. App.CHouston [14th Dist.] Sept. 24,
1998, pet. ref=d) (not designated for publication)
(stating Texas follows the United States Supreme Court and the federal courts
of appeal concerning a criminal defendant=s right to a public trial).  Accordingly, we will not separately address appellant=s state constitutional claims.  In addition, we have
not been asked in this issue to evaluate the propriety of the trial court
ejecting Mr. Shearer from the courtroom  except to the extent such action may
have violated appellant=s constitutional right to a public trial. 





[6]  Appellant has not raised any issue challenging the
trial court=s exclusion of any of the testimony at issue in
appellant=s offers of proof.





[7]  The dissent contends we overlooked Maria Resendez in
our handling of appellant=s third issue.  However, appellant=s third issue on appeal was A[d]id the trial court err by repeatedly refusing to
allow appellant to make offers of proof during the trial?@  As appellant was allowed to make an offer of proof
regarding the excluded testimony of Ms. Resendez, a witness during the
punishment phase of the trial, before the charge was read to the jury during
the punishment phase of the trial, she does not fall within the purview of
appellant=s third issue and need not be addressed.





[8]  Citing to Montgomery v. State, 810 S.W.2d
372, 380 (Tex. Crim. App. 1990), the State argues the trial court, when
conducting a Rule 403 analysis balancing the probativeness of evidence against
its prejudicial effect, has a Alimited right
to be wrong@ when deciding the admissibility of evidence. 
However, in its opinion on rehearing, the Court of Criminal Appeals clarified
that statement=s meaning when it held that A[t]he trial court has no >right= to be >wrong= if that means
to admit evidence which appears to the appellate court, affording all due
deference to the trial court=s decision,
nevertheless to be substantially more prejudicial than probative.@  Mongomery v. State, 810 S.W.2d 372, 393 (Tex.
Crim. App. 1990).





[9]  Because appellant has not provided any explanation or authority for
construing the Texas Constitution as conferring greater protection in this area
of the law than the federal constitution, we will not separately address his
state constitutional argument.  Johnson
v. State, 853 S.W.2d 527, 533 (Tex. Crim. App. 1992).





[10]  The prosecutor=s
exact argument was: AAnd you will look at this and you know that he
voluntarily pled guilty to this.  And, of course, he wants to put his wife up
here to give a whole other story about a law that doesn=t exist as to why she couldn=t tell her side of the story.@  Appellant=s
trial counsel then interposed an objection not at issue in this appeal. The
prosecutor then continued her argument: AWhere
on here does it say it was involuntarily [sic]?  Once again, running and hiding
from his own responsibility.  He can=t
even - - being here today and they can=t
take responsibility for their actions.@





[11]  The argument at issue here ran:

 

When you leave here today and you go back to work,
people will ask you where have you been the last week.  Where have you been? 
And you=ll say you know, I was a juror in a murder case.  And
we found him guilty pretty fast, in about four hours.  And then - - then they=re going to say what was [sic] the facts - - what was
the case about?  And you=re going to say well, we heard about this guy, the
defendant.  His name was Cesar Andrade.  He was driving on the road, and really
for no reason, he killed a 19-year-old boy, just four shots.  We know of at
least four shots without hesitation, without any remorse, no care in the
world.  Could care less about the boy he killed that night.  He doesn=t care.  He has no remorse.  As he=s here in court today, no remorse.

 

*          *          *

 

Now - - and they=ll
say he shot him for no reason at all.  And you=re like yes.  And then you=ll
tell them and he ran.  As soon as the police caught on to him, he ran.  And he
wasn=t caught until 2003 in California for attempted
murder.  And they=ll say attempted murder.  And you=ll say yes.  And they=ll say what happened in that case?  And you=ll say well, they flew down a victim here from
California who said the same thing.  For no reason he stabbed him in the back -
- in the back with a knife.  Didn=t
even see it coming.

 

*          *          *

 

I ask you to give Mr. Andrade as much mercy as he gave
Margarito Resendez that day, which is none at all.  I ask you to give him no
less than 60 years and up to life for taking a human life.