NO. 07-08-0175-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 23, 2009
______________________________

EDWIN DEGRAFF, 

                                                                                                 Appellant

v.

THE STATE OF TEXAS, 

                                                                                                 Appellee
_________________________________

FROM THE 64TH DISTRICT COURT OF HALE COUNTY;

NO. B16020-0505; HON. ROBERT W. KINKAID, JR., PRESIDING
_______________________________

Memorandum Opinion
_______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
          In one issue, appellant Edwin DeGraff appeals his conviction for aggravated sexual
assault of a child by challenging the factual sufficiency of the evidence. We find the
evidence sufficient and affirm the judgment. 
          The pertinent standard of review is explained in Watson v. State, 204 S.W.3d 404
(Tex. Crim. App. 2006) and its progeny. We refer the parties to them. 
          Next, appellant was convicted of aggravated sexual assault by intentionally and
knowingly causing the penetration of the female sexual organ of his nine-year-old daughter
by his finger. See Tex. Penal Code Ann. 22.021(a)(2)(B) (Vernon Supp. 2009). Appellant
attacks the sufficiency of the evidence illustrating that he penetrated the complainant with
his finger. Furthermore, though he admitted that he touched the child’s vagina with his
hand and acknowledged the impropriety of that act, he denied having committed a criminal
offense. Yet, in that statement he also said that the tips of two fingers “touch[ed] the
interior part of the outside lips but didn’t go inside of them.” So too did he draw a picture
illustrating the relationship between those two fingers and the interior part of the labia
touched.
          We have held that the slightest penetration is sufficient to sustain a conviction. 
Green v. State, 209 S.W.3d 831, 832 (Tex. App.–Amarillo 2006, pet. ref’d). Furthermore,
penetration includes pushing aside and reaching beneath a natural fold of skin into an area
of the body not usually exposed even when one is naked. Vernon v. State, 841 S.W.2d
407, 409 (Tex. Crim. App. 1992). Appellant’s statement and his drawing are sufficient for
a rational trier of fact to determine beyond a reasonable doubt that penetration occurred. 
That finding is neither against the great weight of the evidence or otherwise manifestly
unjust. 
          Accordingly, the judgment of the trial court is affirmed.
 
                                                                           Brian Quinn 
                                                                          Chief Justice
Do not publish.



's fees has the burden to segregate those
recoverable from an opponent from those which are not. Natural Gas Clearinghouse v.
Midgard Energy Co., 113 S.W.3d 400, 416-17 (Tex. App.-Amarillo 2003, pet. denied);
accord Hruska v. First State Bank, 747 S.W.2d 783, 785 (Tex. 1988) (generally requiring
segregation of fees). Yet, segregation need not occur if the causes of action are
dependent upon the same set of facts or circumstances and, thus, are inseparable. 
Stewart Title Guaranty Co. v. Sterling, 822 S.W.2d 1, 11-12 (Tex. 1991); Natural Gas
Clearinghouse v. Midgard Energy Co., 113 S.W.3d at 416-17. 

 Here, the Varners sought to recover approximately $45,000 in attorney's fees. The
billing summary tendered into evidence illustrated that those fees encompassed action 
taken to prosecute their claims against the Cardenas and founded upon the promissory
note. Yet, so too did it disclose that fees incurred in prosecuting causes of action against
defendants other than the Cardenas were also included in the sum. Moreover, the causes
of action asserted against the other defendants and operative facts underlying them were
distinct from those entitling the Varners to recovery against the Cardenas. 

 The Varners cite us to no authority obligating the Cardenas to pay for attorney's fees
incurred by the Varners in prosecuting distinct claims against distinct parties and involving
distinct facts. Thus, they were obligated to segregate the recoverable fees from those that
were not. And, while the trial court awarded less fees than requested (approximately
$40,000 instead of $45,000), we cannot say, upon the record before us, that the difference
equaled the amount incurred in prosecuting the claims against the other defendants. Thus,
the issue of fees must be remanded to the trial court. Stewart Title Guaranty Co. v.
Sterling, 822 S.W.2d at 12.

 The same can be said of the fees incurred in defending against the Cardenas'
counterclaim. The latter was based not upon the note and vendor's lien. Nor did they
attempt to vitiate or otherwise alter either instrument. (2) Rather, they sued for breach of the
underlying sales contract. Furthermore, the damages sought represented the difference
in cost between the acreage they thought they acquired and the acreage that they actually
received. The difference was then to be used to reduce (by offset) the sum due under the
note. So, while there was some relationship between the claims, the causes of action
differed. Moreover, the operative facts upon which they depended were not so intertwined
as to be inseparable. Thus, the fees incurred by the Varners in prosecuting their claims
were capable of segregation from those incurred in defending against the counterclaim.

 Third Issue - Pre and Post-Judgment Interest 

 The Cardenas next complain about the trial court's application of the default interest
rate to the sums found outstanding. That rate, as specified in the note, was 18% per
annum. Furthermore, their argument is two-fold. We address each part in turn.

 First, they assert that because the trial court afforded them some relief by reforming
the agreement, they were not in default. Our having determined that the trial court erred
in reforming the contract price vitiates this contention, however. 

 The next ground of contention concerns the acceleration of the note payments. 
According to the Cardenas, no evidence exists of record establishing that the Varners
accelerated payment of the note prior to the date of suit. And, because of that
circumstance, the trial court could not order that the entire balance under the note accrue
interest at 18% from the date the Cardenas first failed to make an installment payment. We
agree.

 The promissory note executed by the Cardenas had a principal of $185,000. That
principal, with accrued interest, was to be paid through equal annual installments of
$34,448.66. The first installment was due on December 15, 1998, and it is undisputed that
the Cardenas made one payment of $34,448.66. Under the terms of the note, the second
payment was due on December 15, 1999. However, it was not paid, nor was any other.
The Varners then sued to collect the entire principal on July 27, 2000, or approximately five
months before the third installment fell due. And, the allegation in their petition and
pertaining to acceleration simply involved the statement that "all sums due and owing under
the terms of said note have been declared accelerated and past due and owing." 

 Our review of the record uncovered no evidence illustrating that the Varners ever
notified the Cardenas of their intent to accelerate the note. Similarly undiscovered was 
evidence of actual acceleration any time before July 27, 2000. Nor did either party cite us
to any such evidence. Nonetheless, the trial court ordered, via its judgment, that interest
accrue on the entire unpaid principal at the rate of 18% from December 15, 1998. The
latter date was one year before the second installment was due and the Cardenas
breached the terms of the note. 

 To lawfully accelerate a promissory note (assuming, of course, the creditor has the
right to accelerate), the creditor must afford the debtor notice of its intent to accelerate and
of actual acceleration. Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566-67
(Tex. 2001); Baldazo v. Villa Oldsmobile, Inc., 695 S.W.2d 815, 817 (Tex. App.-Amarillo
1985, no writ). Moreover, notice that the debt was accelerated has no legal effect unless
preceded by notice of intent to accelerate. Baldazo v. Villa Oldsmobile, Inc., 695 S.W.2d
at 817. Given the want of evidence illustrating that the Cardenas were ever notified of the
Varners' intent to accelerate, the Varners did not prove lawful acceleration. Thus, the trial
court erred in not only concluding that the entire unpaid principal was due on December 15,
1998, but also that interest at the default rate (or 18%) accrued on the entire sum as of that
date. 

 Fourth Issue - Post-Judgment Interest on Attorney's Fees and Court Costs

 Next, the Cardenas allege that the trial court erred in ordering that interest accrue
at the rate of 10% on the award of attorney's fees. The correct rate was 5%, they contend.
The Varners concede the issue. Therefore, we sustain it. 

 Final Issue - Award of Cost for Survey

 The final issue before us involves that portion of the judgment awarding the
Cardenas "their survey costs in the amount of $7,000.00." The Varners contend that the
trial court had no basis for doing so. We sustain the issue.

 To the extent the award may have been made as part of the assessment of court
costs, we note that the survey in question was not ordered by the trial court. See Tex. R.
Civ. P. 796 (allowing the trial court to appoint a surveyor to survey the premises in
controversy). Nor did the trial court appoint the surveyor. Authority holds that if the
surveyor is not appointed by the court and acts solely on behalf of one party, his fees may
not be assessed as costs. Whitley v. King, 581 S.W.2d 541, 544 (Tex. Civ. App.-Fort
Worth 1979, no writ). Given Whitley and the evidence indicating that the Cardenas
unilaterally hired the surveyor, the fees incurred in conducting a survey cannot be taxed to
the Varners as court costs. 

 

 Nor can the award be viewed as damages or relief due to any purported breach of
contract. While it may be that the Varners allegedly agreed to provide their opponents with
a survey and ultimately did not, nothing was said about the obligation in the counterclaim
filed by the Cardenas. So too did the Cardenas omit from their live pleading any request
for equitable relief; thus, their suggestion on appeal that the fee was awarded "as an
equitable remedy" lacks foundation. Finally, no one posits that the cause of action entitling
the Cardenas to recover the expense was tried by consent. Because the relief granted
must conform to the live pleadings, Tex. R. Civ. P. 301; see Cunningham v. Parkdale Bank,
660 S.W.2d at 812-13 (stating that a party may not be granted relief in absence of
pleadings to support that relief), and the relief in question was not encompassed by the
Cardenas' pleadings, the trial court erred in awarding it. See Cunningham v. Parkdale
Bank, 660 S.W.2d at 812-13 (stating that a judgment must be supported by the pleadings,
and, if it is not, then it is erroneous). 

 In sum, we reverse that portion of the judgment reforming the purchase price of the
land and, thereby, reducing the outstanding principal of the promissory note by $57,767 to
$105,914.00 and render judgment that the unpaid principal was and is $163,681.00. Next
we reverse that portion of the judgment awarding the Varners their attorney's fees, sever
that issue from this appeal, and remand it to the trial court. Next, we reverse that portion
of the judgment awarding the Cardenas $7,000 for the cost of the survey. Finally, we
reverse that portion of the judgment declaring that prejudgment interest accrue on the
entire unpaid principal at the rate of 18% from December 15, 1998, until judgment and
remand the issue to the trial court for further proceedings. In all other aspects, the
judgment is affirmed.


 Brian Quinn 

 Chief Justice
1. The Cardenas do not assert in their appellate brief that the theory was tried by the consent of the
parties.
2. It should be recalled that the Cardenas did not include in their live pleading a demand for reformation
of the note or lien.